In the Matter of the Involuntary Termination of Parent–Child Relationship of H.T., Minor Child and Her Father,

Anthony Carbonatto, Appellant–Respondent,

v.

Marion County Department of Child Services, Appellee–Petitioner.

No. 49A02–0808–JV–750.

Court of Appeals of Indiana.

Feb. 27, 2009.

Amy Karozos, Indianapolis, IN, Attorney for Appellant.

Julie A. Stalker, Rockville, IN, Attorney for Appellee.

## OPINION

BROWN, Judge.

Anthony Carbonatto ("Father") appeals the trial court's termination of his parental rights to his daughter, H.T. Father raises a dispositive issue for our review, which we revise and restate as whether the trial court clearly erred in determining that continuation of the parent-child relationship posed a threat to H.T.'s well-being.

We reverse and remand with instructions.

On August 29, 2003, approximately four months before H.T.'s birth, Father was incarcerated after violating the terms of his probation. Prior to his incarceration, Father had been in a relationship with H.T.'s mother, and he had attended birthing classes with her. During the time that Father was incarcerated, H.T.'s mother began a relationship with J.N., and they had a child, K.N., born October 15, 2005. However, despite H.T.'s mother's actions, Father called from prison roughly once per week and spoke with H.T.

While in prison, Father was informed that he could obtain an early release if he participated in certain programs, and he participated in these programs with the intention of being released and fathering his daughter. Because of his hard work, Father earned a Bachelor of Arts degree from Ball State University and the attendant three-year deduction in his sentence. (Finding of Fact # 5; Appellant's App. at 11). He also completed a substance abuse program and parenting classes during his incarceration. *Id.*[1]

On August 10, 2006, the Marion County Department of Child Services ("MCDCS") filed a petition alleging that H.T. and K.N. were children in need of services. H.T. had unexplained bruising under both eyes, and K.N. had severe diaper rash on her back, vagina, and thighs. The children were removed from the home and were placed with K.N.'s paternal grandparents. After the CHINS hearing, H.T. was ordered to continue placement with K.N.'s grandparents. Because Father was incarcerated, he could not provide care to H.T. at that time.

During the time he was incarcerated, Father sent letters to K.N.'s grandmother in an attempt to get to know her and her husband, to maintain a long distance relationship with H.T., and to thank the grandmother for her assistance with H.T. Father also sent letters and cards to H.T. The grandmother did not respond to Father's letters, and she withheld the letters and cards from H.T. (Finding of Fact # 6; Appellant's App. at 12).

On November 14, 2007, a little over fifteen months after H.T.'s placement in K.N.'s grandparents' home, MCDCS filed a petition for involuntary termination of the parent-child relationship between Father and H.T. Father began communicating with Brian Robinson, H.T.'s guardian ad litem. On April 28, 2008, Father also sent a letter to MCDCS informing the family case manager that he was to be released from prison on May 1, 2008.

One hour after being released from prison, Father appeared at Robinson's office, a

---

1. The Marion County Department of Child Services makes much of the fact that no documentation was presented in court to validate the completion of these services. Nonetheless, the trial court found that the program and classes were completed. Accordingly, there is no issue here.

fact that left Robinson "very impressed." (Tr. at 28). Robinson called MCDCS to inquire as to when Father would start court-ordered services. To Robinson's surprise, MCDCS did not want to meet with Father. (Tr. at 30). Father was later told that MCDCS would not provide services because such services were not in H.T.'s "best interest." (Tr. at 45). Indeed, Andrea Burton, a MCDCS employee, testified that the MCDCS "determined that in the best interest of [H.T.], we would not be offering no [sic] services to [Father] at this time." (Tr. at 46).

On June 4, 2008, approximately one month after Father's release, a termination hearing was held. Thereafter, the trial court terminated the parent-child relationship between Father and H.T.

 The traditional right of a parent to establish a home and raise his child is protected by the Fourteenth Amendment of the United States Constitution. *Bester v. Lake County Office of Family & Children,* 839 N.E.2d 143, 147 (Ind.2005). Parental rights may be terminated when a parent is unable or unwilling to meet his parental responsibilities. *Id.* The purpose of terminating parental rights is not to punish a parent, but to protect the child. *In re L.S.,* 717 N.E.2d 204, 208 (Ind.Ct. App.1999), *trans. denied, cert. denied,* 534 U.S. 1161, 122 S.Ct. 1197, 152 L.Ed.2d 136 (2002).

 When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Bester,* 839 N.E.2d at 147. We will consider only the evidence and reasonable inferences therefrom that are most favorable to the judgment. *Id.* When reviewing findings of fact and conclusions thereon entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. *Id.* First, we determine whether the evidence supports the findings. *Id.* Then, we determine whether the findings support the judgment. *Id.* The trial court's judgment will be set aside only if it is clearly erroneous. *Id.* "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *Id.* (quoting *In re R.J.,* 829 N.E.2d 1032, 1034 (Ind.Ct. App.2005)).

 Ind.Code § 31–35–2–8(a) provides that "if the court finds that the allegations in a petition described in [Ind.Code § 31–35–2–4] are true, the court shall terminate the parent-child relationship." Ind.Code § 31–35–2–4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege that:

(A) [O]ne (1) of the following exists:

(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;

(ii) a court has entered a finding under I.C. § 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or

(iii) after July 1, 1999, the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;

(B) there is a reasonable probability that:

(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

The State must establish these allegations by clear and convincing evidence. *Egly v. Blackford County Dep't of Pub. Welfare,* 592 N.E.2d 1232, 1234–35 (Ind.1992); *Doe v. Daviess County Div. of Children & Family Services,* 669 N.E.2d 192, 194 (Ind. Ct.App.1996), *trans. denied.*

In the present case, the trial court did not base its termination order on Ind.Code § 31–35–2–4(b)(2)(B)(i) because the condition that resulted in placement outside Father's custody—his incarceration—had been remedied by Father's release from prison. Instead, the trial court based its termination order on Ind.Code § 31–35–2–4(b)(2)(B)(ii), which allows for termination when "the continuation of the parent-child relationship poses a threat to the well-being of the child." The trial court also found that termination was in the best interest of H.T. under Ind.Code § 31–35–2–4(b)(2)(C) and that there was a satisfactory plan for H.T.'s care and treatment, the adoption of H.T. by K.N.'s grandparents.

With reference to Ind.Code § 31–35–2–4(b)(2)(B)(ii), the trial court found:

[H.T.] has never met her alleged [sic] father and does not have a relationship with him. This is due to [Father's] own choice of behavior and actions that resulted in incarceration.

Given [Father's] efforts to better himself in prison, obtaining employment and a place to live shortly after his release, and his interest in [H.T.], there is a probability that he would engage in services and remain available to parent.

[MCDCS's] plan for [H.T.] is to be adopted by [K.N.'s grandparents] and remain with her sibling. Andrea Burton has observed [H.T.] to be very bonded in her placement. She believes that if [H.T.] were to be removed from the home and her sibling she would suffer emotional harm and have a hard time rebounding. The plan for adoption is a satisfactory plan for care and treatment of [H.T.].

Continuation of the parent-child relationship poses a threat to the well-being of [H.T.]. [H.T.] is in a stable home with her half-sibling where she has been for the last twenty-one months. Continuing the parent-child relationship between [Father] and [H.T.] would require [H.T.] to establish a relationship with a person she has never met and would deny her permanency as she waited for him to complete services. Although [Father's] intentions to comply with services appear sincere, they come too late, as [H.T.] has bonded with her foster parents and has a close relationship with her half-sister. Leaving [H.T.] in limbo as [Father], an alleged [sic] father and complete stranger, attempts to complete services, poses a threat to the emotional well-being of [H.T.].

(Findings of Fact ## 10, 13, 14, and 15; Appellant's App. at 12–13). Simply put, the trial court terminated Father's parental rights because it concluded that H.T.'s well-being would be threatened if she were not immediately adopted by K.N's grandparents.

*Rowlett v. Vanderburgh County Office of Family and Children,* 841 N.E.2d 615 (Ind.Ct.App.2006), is very similar to the instant case. In *Rowlett,* the trial court determined that a father, who had been in prison while his children thrived in foster care with the maternal grandmother and step-grandfather, should be deprived of his

parental rights. In other words, the trial court determined, among other things, that permanency was a determining factor. We reversed, and in so doing, we held:

> We acknowledge that in the matter of raising children, stability of environment is an important factor. However, this in and of itself is not a valid basis for terminating the relationship between the natural parent and the children. . . . At the time of the dispositional hearing, the children had been in the care of the maternal grandmother for nearly three years, and the evidence presented at the hearing demonstrates that the children are thriving under the arrangement.

\* \* \*

> [W]e see little harm in extending the CHINS wardship until such time as Father has a chance to prove himself a fit parent for the children. This is not a case where the children are in a temporary arrangement pending termination of parental rights. Rather, in this case, continuation of the CHINS wardship will have little, if any, impact upon them. The law makes [it] abundantly clear that termination of a parent's relationship with a child is an extreme measure to be used only as a last resort when all other reasonable efforts to protect the integrity of the natural relationship between parent and child have failed. Given the circumstances before us, we do not believe that the situation before us has reached the "last resort" stage. . . . Here, Father, at the very least, was entitled to maintain a relationship deemed in fact and in law to be so undeniably important.

841 N.E.2d at 623 (citations omitted).

In the instant case, H.T. is not in a temporary arrangement pending termination of her Father's parental rights. As in *Rowlett*, continuation of the CHINS wardship will have no negative impact. Furthermore, Burton and Robinson's primary concern, that H.T. will not have a relationship with her step-sister, appears to be unfounded. As Father testified at the termination hearing, "If I was to be in [H.T.'s] life, she could see her sister as much as she wanted." (Tr. at 12).

We are aware that the trial court, MCDCS, and the guardian ad litem are concerned that H.T. has not had a face-to-face meeting with Father. However, there was contact between Father and H.T. before removal and lack of post-removal contact while Father was in prison was not due to Father but to the inaction of others. Furthermore, the lack of face-to-face contact after Father's release was occasioned by the filing of the petition to terminate, not by Father.

The trial court erred in concluding that Father's efforts are "too late." While the father's fitness was in question in *Rowlett*, the trial court in the present case found that Father is willing and able to complete any services and become the custodial parent of his daughter. This is not a case like *In re Campbell*, 534 N.E.2d 273 (Ind.Ct. App.1989), where a child is put on the shelf while waiting for the transformation of a parent who is incapable of or unwilling to care for the child. Simply put, there is no need for the extreme measure of permanently terminating Father's right to be a parent to his daughter. The trial court clearly erred in concluding that the State proved that H.T.'s well-being is threatened by her Father's involvement in her life.

We reverse and remand with instructions that the trial court vacate its termination order.

ROBB, J. and CRONE, J., concur.