Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEYS FOR APPELLANT:

**RUTH A. JOHNSON**
Marion County Public Defender
Indianapolis, Indiana

**LILABERDIA BATTIES**
Batties & Associates
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**PATRICK M. RHODES**
Indiana Department of Child Services
Indianapolis, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

FILED
Jan 31 2013, 9:10 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF N.W. (Minor Child) and | ) ) ) ) | |
| D.W. (Father), | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 49A02-1206-JT-480 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Larry Bradley, Magistrate
Cause No. 49D09-1108-JT-33481

**January 31, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

D.W. ("Father") appeals the trial court's involuntary termination of his parental rights to his child, N.W. We affirm.

## Facts and Procedural History

In its termination order, the trial court made the following factual findings:

1. [T.A. ("Mother") is the mother of N.W., minor child, who was born on April 15, 2009[1].]

   ….

3. [Father] is the father of [N.W.]

4. [A Child in Need of Services Petition ("CHINS") was filed on N.W. on September 30, 2010.]

   ….

6. [N.W.] had been detained from [his] mother prior to the CHINS filing on an emergency basis, [he was] ordered detained by the CHINS Court at the initial hearing of October 20, 2010, and [he has] never been placed back with [either Mother or Father]

7. At the time the Petition was filed on [N.W.], his father was listed as unknown. [Mother] named [Father] as the father of [N.W.] at a CHINS hearing on October 20, 2010. [Father] was incarcerated at that time and unavailable to parent.

8. [N.W. was] found to be in need of services after a fact-finding hearing on January 28, 2011.

9. On February 17, 2011, [N.W. was] formally removed from [his] mother pursuant to a dispositional order. [He has] now been removed for at least six (6) months.

---

[1] The order also terminates Mother's parental rights to another child, as well as the parental rights of that child's father. We have excerpted the findings pertaining only to Mother, Father, and N.W.

….

11.    On February 17, 2011, [N.W.] was formally removed from his father pursuant to a dispositional order. He has now been removed for at least six (6) months.

12.    [Mother] failed to complete any of the services that were ordered and referred to address conditions of removal and continued placement outside the home.

13.    [Mother's] home based services were closed unsuccessfully due to lack of communication and cooperation.

14.    Due to inappropriate behavior during visitation sessions, [Mother's] visitation was suspended early in the CHINS case on October 29, 2010. On January 5, 2011, the CHINS Court took a request for reinstated visitation under advisement until [Mother] undertook a mental health assessment and followed recommendations. [The Department of Child Services ("DCS")] never received documentation of an assessment being completed and [Mother] has not seen [N.W.] since late in 2010.

15.    [Mother] informed the family case manager that she "did not need" mental health services and "nothing was wrong" although she was encouraged to seek help several times.

16.    [Mother] has a history of instability in housing and employment. She was also incarcerated during the CHINS matter.

17.    It is unknown whether [Mother] has appropriate housing and income to provide for [N.W.]

18.    [Mother] left Indiana and did not contact [DCS] from March of 2011 until May of 2012.

19.    There is a reasonable probability that the conditions that resulted in [N.W.'s] removal and continued placement outside the home will not be remedied by [his] mother. [Mother's] lack of participation in the CHINS case and services, and lack of visitation leads to the conclusion she is either unable or unwilling to remedy conditions and be an appropriate parent. It is clear by the evidence that a major roadblock for [Mother] is her mental health issues on which she has little or no insight.

….

25. [Father] has been incarcerated since December of 2009, when [N.W.] was eight months old.

26. [Father] is serving a nine year sentence for Robbery and expects to be paroled in mid 2014.

27. [Father] has not participated in parenting classes offered at the prison, but has received his certification in meat cutting, in which he participates daily.

28. Prior to his current incarceration, [Father] was incarcerated for four and one-half years for Burglary.

29. Up until his current incarceration, [Father] had a four year cocaine addiction. He participated in a detoxification program for two days but had no other treatment.

30. Prior to being incarcerated in December of 2009, [Father] visited [N.W.] a few times and did not contribute to his support.

31. [Father] has not had contact with [N.W.] since the summer of 2009.

32. [Father] has not been in contact with [DCS] regarding the CHINS proceeding or the welfare of his son.

Appellant's App. at 15-17.

On August 26, 2011, DCS filed a petition for the involuntary termination of Father's parental rights. On May 16, 2012, the trial court held a hearing on the petition, at which Father appeared telephonically and by counsel. On May 21, 2012, the trial court issued its termination order, which contains the following additional findings and conclusions:

33. There is a reasonable probability that the conditions that resulted in [N.W.'s] removal and continued placement outside the home will not be remedied by his father. [Father] has been incarcerated and unavailable to parent throughout the CHINS case. His release is not

4

imminent as he will continue to remain unavailable for over two more years if released on parole.

34. Continuation of the parent-child relationship poses a threat to the well-being of [N.W.] Without adequately addressing and remedying issues of mental health and instability, [Mother] would not be able to provide [N.W.] with a safe environment or meet [his] basic needs. [Mother] has dropped out of services and left Indiana. Continuation of the relationship would only pose as a barrier to obtaining the goal of permanency through adoption for [N.W.]

35. Continuation of the parent-child relationship between [N.W.] and his father poses a threat to [N.W.'s] well-being. Permanency is important to [N.W.] to provide him a sense of security. Terminating [Father's] parental rights would provide [N.W.] the opportunity to achieve permanency through adoption by a caregiver with whom he has become bonded. To continue the parent-child relationship until [Father] is released would leave [N.W.] in limbo.

36. [N.W.] is comfortable placed with [his] maternal cousin. This placement is pre-adoptive.

37. [N.W. has] been observed as doing fine and very bonded in [his] placement.

38. Termination of the parent-child relationship is in the best interests of [N.W.] The parents['] lack of involvement with [N.W.] evidence that they will not provide [N.W.] with permanency. Termination, providing for a subsequent adoption, would provide [N.W.] with permanency in a safe environment.

39. There exists a satisfactory plan for the care and treatment of [N.W.], that being adoption by [his] relative caregiver.

40. Due to the parents' lack of involvement and the importance of permanency, the [DCS] family case manager, who has been assigned to this family since at least October of 2010, believes that termination of the respondent parents' parental rights [is] in [N.W.'s] best interests.

41. [N.W.'s] Guardian ad Litem recommends adoption as the permanency plan in [N.W.'s] best interests.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the parent-child relationship between [N.W.] and [Mother] is hereby terminated…. The parent-child relationship between [N.W.] and [Father] is hereby terminated.

*Id.* at 17-18. Father now appeals.

## Discussion and Decision

"The purpose of terminating parental rights is not to punish parents but to protect their children. Although parental rights have a constitutional dimension, the law allows for their termination when parties are unable or unwilling to meet their responsibility as parents." *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004) (citation omitted). "Individuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children." *Matter of A.C.B.*, 598 N.E.2d 570, 572 (Ind. Ct. App. 1992).

Indiana Code Section 31-35-2-4(b) provides that a petition to terminate parental rights must meet the following relevant requirements:[2]

(2) The petition must allege:

(A) that one (1) of the following is true:

> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

---

[2] Indiana Code Section 31-35-2-4 was amended slightly in 2012. We quote the version of the statute in effect when DCS filed its termination petition in 2011.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove "each and every element" by clear and convincing evidence. *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009); Ind. Code § 31-37-14-2. "Clear and convincing evidence need not show that the custody by the parent is wholly inadequate for the child's survival. Instead, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development would be threatened by the parent's custody." *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010) (citation omitted). If the trial court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We

7

neither reweigh evidence nor assess witness credibility. *Id*. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id*. Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Id*. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id*. Clear error is that which "leaves us with a definite and firm conviction that a mistake has been made." *J.M. v. Marion Cnty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*.

Father does not challenge the veracity of any particular finding. Rather, he essentially challenges the trial court's conclusions that (1) there is a reasonable probability that the conditions that resulted in N.W.'s removal or placement outside the home had not been remedied; (2) there is a reasonable probability that continuation of the parent-child relationship poses a threat to N.W.'s well-being; and (3) termination of the parent-child relationship is in N.W.'s best interests. Appellant's Br. at 10.[3] We note that DCS was required to prove either (1) or (2) but not both, pursuant to Indiana Code Section 31-35-2-4(b)(2)(B). Therefore, we address only (2) and (3) below.

---

[3] The eleven-page argument section of Father's brief contains numerous repetitive passages that make for extremely tedious reading and muddle the arguments being presented. *See*, *e.g.*, Appellant's Br. at 14 ("The involuntary termination of parental rights is an extreme measure that terminates all rights of the parent to his or her child and is designed to be used only as a last resort when all other reasonable efforts have failed."); *id*. at 15 (similar wording); *id*. at 18 (similar wording). *id*. at 20 (similar wording); *id*. at 14 ("The *Fourteenth Amendment to the United States Constitution* provides parents with the rights to establish a home and raise their children."); *id*. at 15 (similar wording); *id*. at 16 (similar wording). Excessive repetition is not effective advocacy.

As for whether there is a reasonable probability that the continuation of the parent-child relationship poses a threat to N.W.'s well-being, we have said that

> [i]n judging a parent's fitness, the trial court should examine the parent's fitness at the time of the termination hearing, as well as the parent's habitual patterns of conduct, to determine whether there is a substantial probability of future neglect or deprivation of the child. A court may properly consider evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment.

*McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003) (citation omitted).

Here, Father was convicted of burglary in approximately 2005 and was sentenced to four and a half years. He developed a cocaine addiction, for which he received minimal treatment. At the termination hearing, Father testified that he had also been addicted to alcohol. Tr. at 25. Father was then convicted of robbery and has been incarcerated since December 2009, when N.W. was eight months old. He visited N.W. only a few times prior to his incarceration, never contributed to his support, and never contacted DCS regarding N.W.'s well-being. He will not be released on parole until mid-2014, when N.W. will be five years old. Notwithstanding Father's vocational efforts while in prison and his stated interest in parenting N.W., his habitual patterns of criminal conduct and substance abuse while

outside the structured prison environment and his failure to cultivate a relationship with his son indicate that there is a substantial probability of future neglect or deprivation of N.W.[4]

Moreover, Father does not challenge the trial court's determinations that permanency and security are important to N.W.; that termination of his parental rights would enable N.W. to achieve permanency via adoption by his maternal cousin; and that to continue the parent-child relationship until Father is released would leave N.W. in limbo. As we said in another case involving an incarcerated parent, "[e]ven assuming that [Father] will eventually develop into a suitable parent, we must ask how much longer [N.W.] should have to wait to enjoy the permanency that is essential to [his] development and overall well-being." *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 375 (Ind. Ct. App. 2006), *trans. denied*; *see also Matter of Campbell*, 534 N.E.2d 273, 275 (Ind. Ct. App. 1989) ("We are unwilling to put [the child] on a shelf until her parents are capable of caring for her appropriately. Two years without improvement is long enough."). We cannot say that the trial court's conclusion regarding the threat to N.W.'s well-being is clearly erroneous.

As for whether termination is in N.W.'s best interests, we have said that the trial court must look at the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). In so doing, the trial court must subordinate the parent's interests to those of the child involved. *Id.* "A parent's historical inability to provide adequate housing, stability and

---

[4] Father asserts that the facts of this case are "very similar" to those in *Rowlett v. Vanderburgh County Office of Family & Children*, 841 N.E.2d 615 (Ind. Ct. App. 2006), *trans. denied*, in which the majority of another panel of this Court reversed an order terminating the incarcerated father's parental rights. Appellant's Br. at 12. We disagree. Unlike Rowlett, Father has failed to maintain a relationship with his child both before and during his incarceration.

supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." *Castro*, 842 N.E.2d at 374. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests." *A.K.*, 924 N.E.2d at 224. We have already addressed Father's historical and/or current inability to provide adequate housing, stability, and supervision, as well as N.W.'s undisputed need for permanency. Furthermore, both the DCS case manager and N.W.'s guardian ad litem testified that termination would be in N.W.'s best interests. Based on the foregoing, we cannot say that the trial court's conclusion regarding N.W.'s best interests is clearly erroneous. Therefore, we affirm the termination order.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.