**In the Matter of Yvonne Earlene CAMPBELL a Child Alleged to be in Need of Services.**

**Harry CAMPBELL and Maude Campbell, Appellants (Respondents Below),**

v.

**BARTHOLOMEW COUNTY DEPARTMENT OF PUBLIC WELFARE**

Appellee (Petitioner Below).

No. 03A04–8808–CV–274.

Court of Appeals of Indiana, Fourth District.

Feb. 23, 1989.

Richard T. Eppard, Columbus, for appellants.

John A. Pushor, Lawson, Pushor, Mote & Coriden, Columbus, for appellee.

CHEZEM, Judge.

### Statement of Case

Appellants, Harry and Maude Campbell, the parents of Yvonne Campbell, appeal the decision of the Bartholomew Juvenile Court terminating the parent-child relationship existing between Harry and Maude Campbell and their daughter, Yvonne Campbell.

We affirm the termination of the parent-child relationship.

### Statement of Facts

Yvonne Earlene Campbell was born to her parents, Harry and Maude Campbell, June 30, 1983. As early as December 12, 1984, the Bartholomew Department of Public Welfare received a complaint regarding the Campbell household. About 15 months later, on March 19, 1986, Yvonne was placed in a foster home after the Welfare caseworker, Mrs. Gwinn, responded to a call from the police regarding a domestic disturbance at the Campbell home. March 21, 1986, a CHINS petition was filed and April 30, Yvonne was found to be in need of services. That day she was placed under the care of the Welfare Department and the Welfare Department was ordered "to provide services to the natural parents in an effort to correct the conditions and problems which led up to the filing of the petition."

The day Yvonne was placed in a foster home, Mrs. Gwinn observed "numerous bruises, scratch marks, bite marks, [and] old scars" on Yvonne. The Campbells admitted to Mrs. Gwinn that they had "some responsibility" for these injuries.

Later, Mrs. Gwinn identified three major problems with the Campbells' domestic situation: Mr. Campbell has an alcohol and substance abuse problem, the Campbells' parenting skills are poor, and the Campbells' have a poor marital relationship.

The Welfare Department implemented a plan to assist the Campbells. Mrs. Guinn recommended an alcohol treatment program, marital and parenting counseling, Yvonne's foster home care and a visitation schedule for both parents to see Yvonne on a regular basis.

For the next two years, the Campbells did not progress with the welfare plan and the plan was modified accordingly. On April 12, 1988, the Bartholomew Juvenile Court terminated the parent-child relationship between Yvonne and both of her parents. The Welfare Department plans to place Yvonne for adoption.

### Issues

Three issues were presented by the Campbells for review, which parallel different sections of the Indiana Code:

I. Was there sufficient evidence for the trial court to find that there was "a reasonable probability that the conditions that resulted in the child's removal [from the home] will not be remedied?" I.C. 31–6–5–4(c)(2).

II. Was there sufficient evidence for the Court to find that "termination [of

parental rights] is in the best interests of the child?" I.C. 31–6–5–4(c)(3).

III. In its efforts to reunite respondents and their child, did the Bartholomew Welfare Department comply with the policy put forth in I.C. 31–6–1–1(5):

It is the policy of this state and the purpose of this article:

(5) to strengthen family life by assisting parents to fulfill their parental obligations.

## Discussion

■ The Campbells' first contention is that there was insufficient evidence to reasonably conclude that the existent conditions in the Campbell home would probably not change. We believe that there was sufficient evidence in the record for the Trial Court to draw such a conclusion.

This Court may not reevaluate the evidence. We may only decide whether there was sufficient evidence on the record. We cannot "reweigh the evidence nor judge the credibility of the witnesses; we may only consider that evidence most favorable to the judgment," *J.K.C. v. Fountain County Department of Public Welfare* (1984), Ind. App., 470 N.E.2d 88.

The record is replete with evidence that Harry and Maude Campbells' behavior did not improve for two years. The caseworker, Mrs. Gwinn, and those most familiar with the Campbell situation agreed that due to the lack of reform in the Campbells' behavior from April 1986 to April 1988, there would probably be no future improvement. There was no evidence to the contrary, i.e., that the Campbells' behavior had improved. And the only evidence to suggest that the behavior would improve in the future was the testimony of the Campbells, themselves.

There was evidence that Mr. Campbell still had a drinking problem and that he acted inappropriately when under the influence of alcohol. Mr. Campbell's lawyer said, "... as recently as last Thursday you admitted to [Mrs. Gwinn] that you had been using alcohol and marijuana." And Mr. Campbell's reply was, "Yeah, and there's been times I've quit for twenty (20)

days and I haven't had anything to drink since last Thursday now."

There was also evidence that the Campbells did not progress in the case plan the caseworker prepared for them. At trial, Mr. Pushor asked, "... how did they [the Campbells] progress in the case plan that you developed for them?" Mrs. Gwinn answered, "We've done this over two (2) years, had a case plan every six (6) months we look at how well they've done and see if they have accomplished these goals ... They've never been able to complete those things we've asked them to do." Mrs. Gwinn also stated that she did not feel that there is a reasonable probability that the Campbells' problems will be remedied.

As recently as a week before trial, Mr. Campbell told the caseworker that "Maude might do something to [Yvonne] if she was placed back home." The Welfare Department does not have to rule out any possibility of change; the Welfare Department just has to show that there is a reasonable probability the Campbells' behavior will not change.

This Court has held that such a combination of evidence is adequate when the parents did not correct their behavior for four years. The parents' "testimony together with the caseworker's testimony and the parents' inaction over a period of four years" is sufficient evidence to support the trial court's judgment "that there is reasonable probability that the conditions ... that resulted in the children being removed from the parents will not be remedied." *Matter of VMS* (1983), Ind.App., 446 N.E. 2d 632, 638.

In light of this and other evidence on the record, we believe that there was sufficient evidence to show a reasonable probability that these conditions which led to removing Yvonne from her home will not change. We are unwilling to put Yvonne on a shelf until her parents are capable of caring for her appropriately. Two years without improvement is long enough.

■ The Campbells next contend that there was insufficient evidence to prove

that termination of parental rights was in the best interest of Yvonne. We disagree.

There is evidence in the record which indicates that termination of parental rights and subsequent adoption is in Yvonne's best interest. Once again, we may not reevaluate the credibility of the witnesses nor reweigh the evidence. *J.K.C., supra.*

Mrs. Bennett, Yvonne's guardian *ad litem* stated that, "... Yvonne having to wait three, four, five years in a foster home ... [is not] in her best interest, ... I think in the long term in Yvonne's best interest, it would be my recommendation that the rights be terminated."

Additionally, Mrs. Gwinn recommended termination of parental rights. She also stated that it is "not fair to [Yvonne] to continue to leave her in a foster home in limbo for a long period of time...." She also noted that foster homes are not permanent, and that children can sense the impermanency.

Other evidence indicated that Yvonne was behind socially and mentally but has improved since she has been in her foster home.

Due to the aforementioned and other evidence, we believe that there was sufficient evidence to show that termination of parental rights is in Yvonne's best interest.

■ The Campbells' third contention is that the Welfare Department did not comply with the policy set forth in the I.C. 31-6-1-1(5), to strengthen family life by assisting parents to fulfill their parental obligations. This argument is the weakest of the three.

The record, once again, is replete with evidence that the Welfare Department worked with the Campbells and made every reasonable effort to help them correct their problems. Just because the plan was unsuccessful does not therefore imply that the Welfare Department was not doing an adequate job. In fact, it seems that the difficulty with the Welfare Department's plan was the uncooperative behavior of Mr. and Mrs. Campbell.

The testimony of the Welfare caseworker, Mrs. Gwinn, shows that the Welfare Department sufficiently complied with the intent of I.C. 31-6-1-1(5):

I've worked with the family for approximately two years, and ... have talked with them on numerous occasions ..., have referred them to different services....

Mrs. Gwinn formulated a case plan. She also provided a visitation plan for Yvonne to see Mr. and Mrs. Campbell on a regular basis. There was other evidence which indicated that the Welfare Department complied with the intent of I.C. 31-6-1-1(5). The goals of correcting the family's problems and reuniting the family (if appropriate) were evident in the Case Plan:

Counseling for Mr. and Mrs. Campbell at Quinco with Larry Ewert 1.) to provide both parents with parenting skills and to work on agreeing on disciplining techniques with Yvonne ... 4.) working on relationship between Mrs. Campbell and Yvonne.

Unfortunately, the parents never progressed to the point that they could be reunited with Yvonne.

All-in-all, the evidence indicates that much effort was put forth by the Welfare Department to correct the Campbells' problems and therefore that the Welfare Department did comply with the intent of I.C. 31-6-1-1(5).

For all of the reasons stated above, we affirm the judgment of the Trial Court.

CONOVER, P.J., concurs.

MILLER, J., concurs in result.