## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 30 2016, 8:45 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James A. Edgar
J. Edgar Law Offices, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of:

K.T. and K.O. (minor children)

and

R.T. (father),

*Appellant-Respondent,*

*v.*

The Indiana Department of Child Services,

*Appellee-Petitioner,*

*and*

December 30, 2016

Court of Appeals Case No. 49A02-1605-JT-1127

Appeal from the Marion Superior Court
The Honorable Marilyn A. Moores, Judge
The Honorable Larry E. Bradley, Magistrate

Trial Court Cause Nos. 49D09-1512-JT-749 & 49D09-1512-JT-750

Child Advocates, Inc.,
*Appellee/Guardian Ad Litem.*

**Bradford, Judge.**

# Case Summary

Appellant-Respondent R.T. ("Father") is the alleged father of K.T. and K.O. (collectively, "the Children"),[1] minor children born in 2005 and 2007, respectively. Father has been incarcerated most of Children's lives and has not seen them since late 2011. In May of 2012, Appellee-Petitioner the Indiana Department of Child Services ("DCS") filed a petition alleging that the Children were children in need of services ("CHINS"). In July of 2012, the juvenile court found Children to be CHINS and ordered services, with which Father did not comply.

In August of 2013, DCS changed Children's permanency plan from reunification with Father to adoption. In December of 2015, DCS filed a petition to terminate Father's parental rights ("TPR Petition"). Following a hearing in April of 2016, the juvenile court ordered that Father's rights in the Children be terminated. Father contends that the juvenile court erred in

---

[1] The termination of Mother's parental rights in the Children is not at issue in this appeal.

concluding that DCS produced sufficient evidence to sustain a termination of his parental rights in Children. Because we disagree, we affirm.

# Facts and Procedural History

[3] K.T. was born on February 7, 2005, and K.O. was born on September 15, 2007. On or about May 30, 2012, DCS filed its petition alleging that the Children were CHINS based, in part, on Father's inability or unwillingness to provide Children with care or supervision. On July 27, 2012, the juvenile court adjudicated the Children as CHINS. On August 10, 2012, the juvenile court ordered Father to participate in services, which did not occur because Father was incarcerated.

[4] On October 9, 2012, the juvenile court held a review hearing, at which Father did not appear due to his incarceration. On August 9, 2013, the juvenile court changed the permanency plan from reunification to adoption. In March of 2014, Father signed consent for the Children's adoption by their paternal grandmother and a paternal uncle. However, DCS removed the Children from these placements, and the adoptions did not occur. On December 11, 2015, DCS filed a TPR Petition.

[5] On April 26, 2016, the juvenile court held an evidentiary hearing on the TPR Petition. The juvenile court heard and admitted evidence regarding Father's criminal history. In 2008, Father was convicted of Class A misdemeanor carrying a handgun without a license and was sentenced to 365 days in jail and

185 days on probation. On May 27, 2011, Father pled guilty to Class D felony intimidation and Class C felony intimidation and the trial court sentenced him to an aggregate sentence of six years of incarceration with two years suspended to probation. In March of 2012, Father was allowed to serve the remainder of his sentence at what appears to be a half-way house, but was unsuccessfully discharged approximately two weeks later and ordered to serve the remainder of his sentence in the local jail. In April of 2013, the State filed a petition to revoke Father's probation in the intimidation case, and, on April 26, was sentenced to one year of incarceration. Father was incarcerated again in 2014 for carrying a handgun without a license, with a release date in September of 2016.

[6] Following the CHINS determination, the juvenile court had ordered Father to complete parenting and psychological evaluations and participate in home-based counseling. DCS Family Case Manager ("FCM") Sher'ron Anderson testified that Father did not begin, much less complete, any of the ordered services due to his incarceration. Father never contacted FCM Anderson to inform her that he had participated in services while incarcerated. At the time of the evidentiary hearing, Father had not seen the Children since the end of 2011 and had not contacted FCM Anderson to arrange visitation.

[7] FCM Anderson testified that permanency was important for the Children because they had lacked stability, and, as a result of the instability, had suffered trauma. DCS recommended that the plan for the Children be changed to adoption. FCM Anderson opined that Father had not remedied the reason for

the Children's removal and that Father's continued parental relationship posed a threat to Children because of his instability and unhealthy behaviors.

[8] Guardian Ad Litem ("GAL") Danielle Pierson opined that adoption was in the Children's best interests due to Father's failure to complete services, frequent incarcerations, and lack of participation in the Children's lives as well as the Children's mental health needs. On April 26, 2016, the juvenile court issued its order terminating Father's parental rights to Children:

> ORDER TERMINATING THE PARENT-CHILD
> RELATIONSHIP
> This matter came before the Court on April 25, 2016, for evidence upon a Petition for Termination of the Parent-Child Relationship. Petitioner, The Indiana Department of Child Services "IDCS" appeared by family case manager Sher'ron Anderson and by counsel, Michelle Laux. Respondent [Father] appeared telephonically and by counsel, John Krause. Danielle Pierson of Child Advocates, Inc. appeared as Guardian ad Litem and by counsel, Ryan Gardner.
> Upon evidence presented, the Court now finds by clear and convincing evidence:
> 1. [Father] is the alleged father of [K.T.] and [K.O.], minor children born on February 7, 2005 and September 15, 2007, respectively.
> 2. The parental rights of the children's mother were involuntarily terminated on March 17, 2014.
> 3. Child in Need of Services Petitions "CHINS" were filed on [K.T.] and [K.O.] on May 30, 2012 under Cause Numbers 49D091205JC021666 & 7 for neglect.
> 4. The children were detained and placed outside the home at the initial hearing held on May 30, 2012.
> 5. The children were found to be in need of services on July 27, 2012.

6.  Disposition was held on August 10, 2012, at which time the children's placement continued outside the home.

7.  The children had been removed, pursuant to a dispositional decree, at least six (6) months prior to this termination action being filed on December 11, 2015.

8.  [Father] was incarcerated at the beginning of the CHINS cases after being convicted of two felony counts of Intimidation.

9.  [Father] was released on probation and attended CHINS hearings in June and July 2012, prior to violating his terms of probation and becoming incarcerated.

10.  [Father] was again incarcerated in early 2014 for Possession of a Handgun without a License. Other than being on work release for a short period of time prior to violating terms of the release, [Father] has remained incarcerated and has an out date in September 2016.

11.  Services were ordered by the CHINS Court on August 10, 2012. Services included home based counseling, a parenting assessment, and a psychological evaluation.

12.  [Father] may have been in jail at [the] time services were ordered.

13.  None of the court ordered services have been done by [Father]. He testified he took a parenting class and anger management class while incarcerated but to what extent is unknown.

14.  [Father] signed consents in 2014 for his mother and brother to adopt the children, with whom the children were placed. The children were later removed from them and placed in foster care.

15.  [Father] has not seen his children since 2011, and he never requested parenting time while in jail and he did not see the children during the two to three months he was not incarcerated.

16.  [Father] plans on receiving a house from his mother to live in and work in welding when he is released from prison.

17.  [Father] has spent a good amount of time incarcerated during his adult life. As an aggravating circumstance

while being sentenced in 2011, the judge found that he had a pattern of adult and juvenile criminal behavior and was resistant to change.

18. The children are placed together, along with a half-sibling in preadoptive foster care.

19. As a result of past trauma from neglect and instability that children have behavioral issues including acting out. They are receiving therapy and have a life skills coach to address their special needs.

20. The children's Guardian ad Litem has observed the children appearing happy and affectionate in their placement.

21. The children are ready to be adopted.

22. Continuation of the parent-child relationship poses a threat to the children's well-being. The children have been in limbo for almost four years and are in need of permanency into a stable home where their high level of mental health needs are being met. The children have not seen their father for five years.

23. There is a reasonable probability that the conditions that resulted in the children's removal and continued placement outside the home will not be remedied by their alleged father. [Father] has a pattern of criminal activity during the children's lives which has resulted in his being unavailable to parent. The pattern includes violating probation and work release, and ending back in jail.

24. Termination of the parent-child relationship is in the best interests of the children. Termination would allow them to be adopted into a stable and permanent home where their needs will be safely met.

25. There exists a satisfactory plan for the future care and treatment of the children, that being adoption.

26. Given the children's placement and their special needs, the Guardian ad Litem recommends adoption as being in the children's best interests.

> IT IS THEREFORE ORDERED, ADJUDGED AND
> DECREED: that the parent-child relationship between [K.T.]
> and [K.O.] and [Father] is hereby terminated.

Appellant's App. Vol. 2 pp. 19-20. Father contends that the juvenile court abused its discretion in concluding that the conditions which led to the removal of the Children would not be remedied, continuing Father's parental relationship posed a threat to the Children, and termination is in the Children's best interests.

# Discussion and Decision

[9] The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise his children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." *Id*. However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet his responsibility as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Therefore, parental rights are not absolute and must be subordinated to the children's interest in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id*.

[10] The purpose of terminating parental rights is not to punish the parent but to protect the children. *Id*. Termination of parental rights is proper where the children's emotional and physical development is threatened. *Id*. The juvenile

court need not wait until the children are irreversibly harmed such that their physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.*

[11] Father contends that the evidence presented during the evidentiary hearing was insufficient to support the juvenile court's order terminating his parental rights to the Children. In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Invol. Term. of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.* Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id.* First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id.*

[12] In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id.* A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id.*

[13]    In order to involuntarily terminate a parent's parental rights, DCS must establish by clear and convincing evidence:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>>
>> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

Father challenges the sufficiency of the evidence to support the juvenile court's decision. Specifically, Father contends that DCS presented insufficient evidence to establish that the conditions leading to the removal of the Children would not be remedied, that continuation of the parent-child relationship posed a threat to the Children, and that termination was in the Children's best interests.

## I. Reasonable Probability that the Conditions Resulting in Removal Would Not be Remedied

Father contends that the record does not establish that the reasons for the Children's removal would not be remedied.

> In determining whether "the conditions that resulted in the child [ren]'s removal … will not be remedied," *id.*, we "engage in a two-step analysis," [*K.T.K. v. Ind. Dep't of Child Servs., Dearborn Cnty. Office*, 989 N.E.2d 1225, 1231 (Ind. Ct. App. 2013)]. First, we identify the conditions that led to removal; and second, we "determine whether there is a reasonable probability that those conditions will not be remedied." *Id.* (quoting [*In re I.A.*, 934 N.E.2d 1127, 1134 (Ind. 2010)]) (internal quotation marks omitted). In the second step, the trial court must judge a parent's fitness "as of the time of the termination proceeding, taking into consideration evidence of changed conditions," *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 152 (Ind. 2005)—balancing a parent's recent improvements against "habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation." *K.T.K.*, 989 N.E.2d at 1231 (quoting *Bester*, 839 N.E.2d at 152) (internal quotation marks omitted). We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. *See*

> *K.T.K.*, at 1234. Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior.

*In re E.M.*, 4 N.E.3d 636, 642-43 (Ind. 2014) (footnote omitted).

[16] Here, the condition that led to the Children's removal was Father's incarceration. The record indicates that Children's continued removal has resulted from Father's ongoing incarcerations and his failure to participate in services or bond with the Children. The question, then, is whether the juvenile court erred in concluding that Father was unlikely to remedy the conditions.

[17] Father has not established error in this regard. The juvenile court heard evidence that Father has committed multiple crimes following the births of the Children, has been incarcerated for approximately five years of their lives, has completed only two classes in those five years, has failed to complete any court-ordered services in the CHINS case, has not seen the Children since 2011, and has never contacted FCM Anderson to arrange visitation. The record indicates that, during the lives of the Children, Father has been a free man for only short periods and had made little, if any, attempt to comply with court-ordered services or play any role whatsoever in the Children's lives. While the Indiana Supreme Court has concluded that "incarceration is an insufficient basis for terminating parental rights[,]" *K.E. v. Ind. Dep't of Child Servs.*, 39 N.E.3d 641, 643 (Ind. 2015), we have far more here. There is little evidence that Father has made any serious attempt to comply with services or a play an active role in the Children's lives. Father has not established error in this regard.

# II. Parent-Child Relationship Posed a Threat to the Children

[18] Father also contends that the juvenile court erred in concluding that the continued parent-child relationship posed a threat to the Children. Because we have already concluded that the trial court did not err in concluding that the conditions that led to the Children's removal would not likely be remedied, we need not address Father's argument in this regard. *See* Ind. Code § 31-35-2-4(b)(2)(B) (providing that DCS must establish that one the following is true: "[t]here is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied[, t]here is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child[, or t]he child has, on two (2) separate occasions, been adjudicated a child in need of services").

# III. Children's Best Interests

[19] We are mindful that in determining what is in the best interests of the Children, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cnty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In doing so, the juvenile court must subordinate the interests of the parents to those of the children involved. *Id.* Furthermore, this court has previously determined that the testimony of a GAL regarding the children's need for permanency supports a

finding that termination is in the children's best interests. *In the matter of Y.E.C.*, 534 N.E.2d 273, 276 (Ind. Ct. App. 1992).

[20] FCM Anderson testified that the DCS plan for the Children was changed from reunification to adoption because it was in their best interests to have that stability. GAL Pierson opined that adoption was in the Children's best interests due to Father's failure to complete services, frequent incarcerations, and lack of participation in Children's lives and Children's mental health needs. This evidence alone is sufficient to sustain the juvenile court's finding that termination is in the Children's best interests. *See, e.g.*, *In re T.F.*, 743 N.E.2d 766, 776 (Ind. Ct. App. 2001) (concluding that testimony of GAL and FCM was sufficient to sustain finding that termination was in the child's best interests). Father's various arguments are nothing more than invitations to reweigh the evidence, which we will not do. Father has failed to establish that the juvenile court erred in terminating his parental rights in the Children.

[21] The judgment of the juvenile court is affirmed.

Vaidik, C.J., and Brown, J., concur.