## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 20 2017, 10:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jonathan T. Feavel
Feavel & Porter, LLP
Vincennes, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of L.W. (Minor Child) and L.D.W. (Father);

L.D.W. (Father),

*Appellant-Defendant,*

v.

Indiana Department of Child Services

*Appellee-Plaintiff*

December 20, 2017

Court of Appeals Case No. 26A01-1706-JT-1341

Appeal from the Gibson Circuit Court

The Honorable Jeffrey F. Meade, Judge

Trial Court Cause No. 26C01-1607-JT-170

**May, Judge.**

L.D.W. ("Father") argues[1] the trial court erred when it involuntarily terminated his parental rights to L.W. ("Child"). He argues the trial court's findings do not support its conclusions the conditions under which Child was removed would not be remedied and termination was in the best interests of Child. We affirm.

## Facts and Procedural History

Child was born to D.W.[2] ("Mother") and Father (collectively, "Parents") on February 25, 2010. On September 26, 2014, Child was removed from Mother's care due to Mother's drug use and placed with Maternal Aunt. As part of an earlier Child in Need of Services ("CHINS") proceeding, the Department of Child Services ("DCS") had substantiated an allegation Father molested Child, such that Child could not be placed with him. On September 30, 2014, DCS filed a petition alleging Child was a CHINS based on Mother's drug use and the substantiated molesting by Father.

On October 21, 2014, the trial court held a fact-finding hearing on the CHINS petition and adjudicated Child a CHINS based on Parents' stipulation to the

---

[1] Father's brief is replete with violations of the Indiana Rules of Appellate Procedure, including: Father's brief is not double spaced as required by Indiana Rule of Appellate Procedure 43(E); his Statement of Issues does not "concisely and particularly describe each issue presented for review" as required by Rule 46(A)(4); and he does not consistently cite to the appendix as required by Rules 46(A)(6)(a) and 46(A)(8)(a). This noncompliance has hindered our review of Father's appeal.

[2] The trial court also terminated Mother's rights to Child, but she does not participate in this appeal.

allegations of drug use and molestation. On November 3, 2014, Child was placed with Maternal Grandmother because Maternal Aunt's high-risk pregnancy prevented her from caring for Child. On November 12, 2014, the trial court held a dispositional hearing. As part of its dispositional decree, the trial court ordered Father to: refrain from the use of alcohol or illegal substances, complete a substance abuse evaluation and follow all treatment recommendations, submit to random drug screens, and participate in homebased counseling.

[4] On February 17, 2015, and July 9, 2015, DCS filed informations of contempt against Father, alleging he tested positive for illegal substances and missed drug screens, both of which were contrary to the trial court's dispositional decree. Father was found in contempt both times and, in August 2015, was ordered to complete substance abuse treatment. In August 2015, the molestation substantiation against Father was overturned, and the court granted Father supervised visitation with Child.

[5] On January 26, 2016, DCS filed another information of contempt against Father, alleging he tested positive for illegal substances and missed drug screens contrary to the trial court's dispositional decree. The trial court found Father in contempt of its order and sentenced him to a suspended sentence of sixty days in the Gibson County Jail.

[6] On July 19, 2016, DCS filed a petition to terminate Parents' rights to Child. The trial court held fact-finding hearings on the matter on September 28, 2016,

January 4, 2017, and January 5, 2017. On May 17, 2017, the trial court issued an order terminating Parents' rights to Child.

# Discussion and Decision

[7] When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002). When an appellant does not challenge any specific findings of fact, we accept the trial court's findings as true. *Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992).

[8] We review termination of parental rights with great deference. *In re K.S., D.S., & B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d at 208.

[9] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the children, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities. *Id.* at 836.

[10] To terminate a parent-child relationship, the State must allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8. Because subsection (b)(2)(B) is written in the disjunctive, the State needs to prove only one. *In re J.W.*, 779 N.E.2d 954, 962 (Ind. Ct. App. 2002), *trans. denied sub nom. Weldishofer v. Dearborn Cty. Div. of Family & Children*, 792 N.E.2d 40 (Ind. 2003). Therefore, when the evidence supports one of the trial court's conclusions under that subsection, we need not determine whether the evidence supports the remaining portions of the subsection. *Id*.

### Requirements under Ind. Code § 31-35-2-4(b)(2)(B)

[11] Regarding the requirements set forth in Indiana Code section 31-35-2-4(b)(2)(B), Father challenges only whether the evidence supports the findings the court used to support its conclusion that the conditions resulting in removal of Child will not be remedied. However, the court also concluded:

> 26. Further, Father's behaviors during the underlying CHINS cases pose a threat to the well-being of the child. The risk of Father relapsing is very high, given Father's past performance and refusal to take responsibility for his own actions, and the Court is not willing to place a child back into a home where the caregiver is too intoxicated to provide the child with what she needs to thrive. To allow the continuation of the parent child relationship would pose a threat to the well-being of the child.

(App. Vol. III at 10-11.)

[12] The court entered a number of independent findings to support that conclusion, including findings Father did not complete services, was found in contempt multiple times throughout the proceedings for testing positive for illegal substances or missing drug screens, and routinely provided "very dilute" urine samples that were "so low that the substance tested could not be classified as human urine[.]" (*Id.* at 10.) Father completed twenty-eight drug screens throughout the proceedings, despite being ordered to complete a drug screen "one time a week from November 2014[.]" (Tr. Vol. II at 217.) Additionally, Father never progressed past supervised visitation with Child. Because the unchallenged findings support the unchallenged conclusion, which supports the termination of Father's parental rights, we need not review Father's allegations regarding the superfluous findings and conclusion. *See T.B. v. Indiana Dept. of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012) (when unchallenged findings support termination, there is no error), *trans. denied.*

### Best Interests of Child

[13] In determining what is in child's best interests, the juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010), *trans. dismissed*. A parent's historical inability to provide a suitable environment, along with the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *In re A.L.H.*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002).

[14] Regarding Child's best interests, the trial court concluded:

4. It is in the best interests of the child to be adopted due to the inability of the Mother and Father to provide appropriate care and supervision for the children;[3]

5. DCS and the Court Appointed Special Advocate (CASA) believe that adoption by [sic] is in the child's best interest. The child and her sibling need to be kept together, as their bond with each other is very strong. The Court finds that adoption is in the child's best interest.

6. Mother's and Father's pattern of substance abuse and mental instability indicates that maintaining a parent-child relationship with Child is not in the best interests of the Child[.]

(App. Vol. III at 11) (footnote added). DCS presented evidence Father missed or tampered with a number of drug screens, had multiple positive drug screens, and did not complete the services required by the court. While he regularly visited with Child, those visits were supervised and Father visited Child after consuming illegal substances.

[15] Father argues termination was not in the best interests of Child because he has a "strong parental-child bond" with Child, (Br. of Appellant at 13), and he has "demonstrated a willingness to undertake the steps to reach reunification." (*Id.*) Father's arguments are invitations for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court does not reweigh

---

[3] L.W.'s sibling was also subject to a termination of parental rights petition, but Father is not the father of that child. However, L.W. and her sibling were in placement together, and the goal was to have them adopted by the same family.

evidence or judge the credibility of witnesses). Further, because Father had not taken advantage of the services offered within the two years between the CHINS adjudication and termination hearings, we cannot say it is in Child's best interests to leave Child in permanency purgatory while giving Father another chance to participate in services and visitation. *See In re Campbell*, 534 N.E.2d 273, 275 (Ind.Ct.App.1989) (appellate court "unwilling to put [child] on shelf until [parents] are capable of caring for her appropriately"). The trial court did not err in concluding termination was in the best interests of Child.

# Conclusion

[16] Because the unchallenged findings support the trial court's conclusions, the trial court did not err when it terminated Father's parental rights to Child. Accordingly, we affirm.

[17] Affirmed.

Vaidik, C.J., and Altice, J., concur.