## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 11 2018, 9:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Melinda K. Jackman-Hanlin
Greencastle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Patricia C. McMath
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of: T.H., A.H., E.H., and M.H. (Minor Children),

and

S.F. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

October 11, 2018

Court of Appeals Case No.
18A-JT-898

Appeal from the Putnam Circuit Court

The Honorable Matthew L. Headley, Judge

Trial Court Cause Nos.
67C01-1708-JT-14
67C01-1708-JT-15
67C01-1708-JT-16
67C01-1708-JT-17

**Baker, Judge.**

[1] S.F. (Mother) appeals the trial court's order terminating her relationship with four of her children. Mother argues that the evidence is insufficient to support the order. Finding the evidence sufficient, we affirm.

# Facts

[2] Mother and J.H. (Father) are the parents of four children: T.H., born in May 2009; A.H., born in February 2011; E.H., born in August 2013; and M.H., born in July 2014. Mother also has two older children who have a different father and who are not part of this case.

[3] This family has been involved with the Department of Child Services (DCS) before. When T.H. was one month old, Mother broke his arm, resulting in an informal adjustment with DCS. Then, A.H. and T.H. were removed from their home in Illinois from January 2012 through November 2013, becoming wards of Illinois during that period. The reason for that removal and wardship was domestic violence between the parents.

[4] On May 29, 2015, Indiana DCS received a report alleging that the four children were victims of neglect after Mother and Father engaged in domestic violence while the children were present in the home. As a result of the incident, Mother had significant bruising and one of her older children had scratches down his back after Father pushed him into a door frame. Mother admitted that she and Father had a history of domestic violence. Both parents were

arrested following the incident; Mother eventually pleaded guilty to misdemeanor battery.[1]

[5] The DCS investigator observed the children in the home on the date of the altercation. M.H. and E.H. were dirty. M.H. had a burn on her left thumb, red knots on the top and left side of her head, a bruise on her right cheek, a linear bruise on the right side of her back, and a scratch on her arm. T.H. had scratches on his arms, chest, and legs, a large linear bruise on his leg, and an engorged tick on his head. T.H. gave conflicting stories about how he got the bruise and scratches, ultimately saying that he was not allowed to talk about how he got them and admitting that Mother had hit him with a baseball bat. A.H. had a bruise on his left knee and he reported that Mother had hit him with a baseball bat. He also stated that his parents fight a lot and that they hit and kick each other. The children did not have any beds; instead, they slept on blankets on the floor.

[6] On June 1, 2015, DCS filed a petition alleging that the children were children in need of services (CHINS) because of domestic violence and the bruising found on the children. The children were removed from the parents' care and custody and placed in foster care. Both parents admitted to the allegations in the CHINS petition and the trial court found the children to be CHINS. On July 7,

---

[1] Father was convicted of battery as a result of this incident. Additionally, at the time of the termination hearing in this case, he was facing charges of felony domestic battery and strangulation on his new wife in Vigo County.

2015, the trial court entered a dispositional order requiring Mother to, among other things, participate with random drug screens, a parenting assessment, a mental health evaluation, a domestic violence assessment, and a substance abuse assessment. Mother was later referred to home-based counseling and anger management services.

[7] Over the course of the CHINS case, Mother was largely compliant with services but failed to make significant progress on most issues. She regularly tested positive for marijuana, often exhibited anger towards the children during visits, quit her job, and failed to maintain independent housing. As recently as one month before the termination hearing, Mother continued to yell at the children during visits and frequently ended visits early by storming off in anger. Mother's visits never progressed to unsupervised and the children were never returned to her care.[2]

[8] On August 2, 2017, DCS filed a petition to terminate the parent-child relationship between Mother, Father, and the children. The termination hearing took place on October 19, 2017, and February 12, 2018. On March 13, 2018, the trial court issued its order terminating the parent-child relationships. Mother now appeals.[3]

---

[2] The children did briefly return to Father's care, but they were returned to foster care after he engaged in domestic violence with his new wife.

[3] Father has not appealed the termination order.

# Discussion and Decision

## I. Standard of Review

Mother's sole argument on appeal is that the evidence does not support the trial court's termination order. Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

> (A)     that one (1) of the following is true:

(i)  The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii)  A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii)  The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)  that one (1) of the following is true:

(i)  There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)  The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)  that termination is in the best interests of the child; and

> (D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

## II. Reasons for Removal

Mother's only argument on appeal is that the trial court erred by finding that there is a reasonable probability that the conditions resulting in the initial and continued removal of the children from her care and custody will not be remedied.[4]

The reason that the children were originally removed from Mother's care and custody was two-fold: domestic violence between the parents and the bruises found on some of the children. Mother notes that she and Father are no longer together; consequently, she maintains that domestic violence is no longer a concern. We note that the end of one relationship does not preclude domestic violence from arising in a future relationship if the underlying issues are not addressed. Regardless, even if we accept for argument's sake that domestic violence is no longer an issue in this case, the other condition resulting in the initial removal—Mother's anger issues and physical abuse of the children—continues to be a cause of significant concern.

---

[4] Mother briefly mentions the other elements of the termination statute but does not make any argument related to them.

[13] Indeed, Mother's behavior with the children during visits is part of the reason they have continued to be removed from her care. She frequently yelled at the children during visits and stormed off in anger, ending the visits prematurely. This behavior occurred as recently as December 2017, in between the two days of the termination hearing. She continually favored the youngest child, M.H., often ignoring the three older boys and failing to show them affection. The trial court found, based on these facts, that Mother "failed to demonstrate a minimally-acceptable level of anger control when dealing with her children and others." Appellant's App. Vol. II p. 26.

[14] In addition to Mother's inability to control her anger when with the children, they continued to be removed from her care because of issues related to her financial stability and sobriety. While Mother was able to maintain employment and independent housing for a time during the CHINS case, she quit her job several months before the termination hearing, remained unemployed, and was living with her grandmother. She also failed to comply with the trial court's directive to refrain from drug use, testing positive for marijuana regularly throughout the CHINS case.

[15] Mother emphasizes that she largely complied with court-ordered services. We do not disagree with that statement, but note that although she participated, she failed to benefit from those services. *See In re A.H.*, 832 N.E.2d 563, 570 (Ind. Ct. App. 2005) (mere participation with services does not establish that conditions have been remedied if the services do not result in the needed change and the parent does not acknowledge a need for change). Mother did not

benefit in any significant way from substance abuse treatment, home-based counseling, or anger management services. The simple truth is that Mother had over two years to work towards remedying the conditions that resulted in her children's removal, but she failed to do so, and it is not fair to the children to make them live in limbo indefinitely. *See, e.g.*, *In re Campbell*, 534 N.E.2d 273, 275 (Ind. Ct. App. 1989) (holding that a court is not required to place children on a shelf until a parent is able to care for them properly).

[16] We find that the evidence in the record supports the trial court's conclusion that there is a reasonable probability that the conditions resulting in the initial and continued removal of the children from Mother's care and custody will not be remedied. Therefore, the trial court did not err by terminating the parent-child relationship.

[17] The judgment of the trial court is affirmed.

May, J., and Robb, J., concur.