## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 23 2019, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of H.H., et al. (Minor Children),

    and

K.H. (Father),

*Appellant-Respondent,*

     v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

January 23, 2019

Court of Appeals Case No.
18A-JT-2160

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Larry E. Bradley, Magistrate

Trial Court Cause Nos.
49D09-1801-JT-25
49D09-1801-JT-26
49D09-1801-JT-27
49D09-1801-JT-28

**Bailey, Judge.**

# Case Summary

[1]     K.H. ("Father") appeals the termination of his parental rights as to H.H., D.H., F.H., and K.H., Jr. ("Jr.") (collectively, "Children"), arguing that the evidence is insufficient to support termination.[1]  We affirm.

# Facts and Procedural History

[2]     Father was the father of H.H. (born in 2005), Jr. (born in 2006), D.H. (born in 2008), and F.H. (born in 2009).  In May 2015, the Marion County Department of Child Services ("DCS") filed a petition alleging Children were Children in Need of Services ("CHINS") due to substance abuse by Father and physical abuse by Children's paternal grandmother.  Children were placed in foster care, and later adjudicated CHINS after Father admitted to the CHINS allegations.  Father was ordered to participate in home-based services.  He was also ordered to undergo a substance-abuse assessment and participate in drug screens.

[3]     Father completed the assessment and entered a detoxification program in April 2016.  After detoxifying, Father completed inpatient treatment and began residing in transitional housing.  While Father addressed his substance abuse, parenting time was suspended.  Parenting time eventually resumed in 2016, after Father had submitted several negative drug screens.  Initially, Father

---

[1] The juvenile court previously terminated the parental rights of Children's mother, who does not actively participate in this appeal.

received therapeutically supervised parenting time. By May 2017, Father had progressed to unsupervised parenting time. However, after Father relapsed in August 2017, his parenting time reverted to supervised parenting time.

[4] In December 2017, Father was arrested and charged with several drug-related offenses, including possession of cocaine, possession of methamphetamine, possession of a narcotic drug, and unlawful possession of a syringe. Around that time, the juvenile court changed the permanency plan to adoption. In January 2018, DCS filed a petition to terminate Father's parental rights.

[5] After his arrest in December 2017, Father was incarcerated until July 19, 2018. Shortly after Father's release, the juvenile court held a fact-finding hearing, which commenced on July 23, 2018, and concluded on July 31, 2018. The juvenile court later entered an order terminating Father's parental rights.

[6] Father now appeals.

# Discussion and Decision

[7] "A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Our General Assembly has thus set a high bar for terminating parental rights." *In re Bi.B.*, 69 N.E.3d 464, 465 (Ind. 2017).

[8] Under Indiana Code Section 31-35-2-4(b)(2), a petition seeking to terminate the parent-child relationship must allege, in pertinent part:

(A) that one (1) of the following is true:

    (i) The child has been removed from the parent for at least six (6) months under a dispositional decree. . . .

(B) that one (1) of the following is true:

    (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

    (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child. . . .

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

[9]    The petitioner must prove each element by clear and convincing evidence. Ind. Code § 31-37-14-2. If the court determines the allegations are true, "the court shall terminate the parent-child relationship." I.C. § 31-35-2-8(a). In doing so, the court must enter findings and conclusions, irrespective of whether the parties have requested them. *See* I.C. § 31-35-2-8(c); Ind. Trial Rule 52. We will not "set aside the findings or judgment unless clearly erroneous," T.R. 52(A); clear error is "that which leaves us with a definite and firm conviction that a mistake has been made," *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592

N.E.2d 1232, 1235 (Ind. 1992). In reviewing for clear error, we look to "whether the evidence supports the findings, and whether the findings support the judgment." *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016). Moreover, we neither reweigh the evidence nor judge the credibility of witnesses, *In re R.S.*, 56 N.E.3d 625, 628 (Ind. 2016), and we give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses," T.R. 52(A).

[10] Father does not challenge the sufficiency of the evidence under subsections (A), (C), and (D) of the termination statute. He focuses on subsection (B), directing argument under subsections (B)(i) and (B)(ii). As this portion of the statute provides alternative grounds for termination, we need only address subsection (B)(i), which pertains to the reasonable probability of changed conditions. In making a determination under this subsection, the "court must judge a parent's fitness 'as of the time of the termination proceeding, taking into consideration evidence of changed conditions.'" *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014) (quoting *Bester*, 839 N.E.2d at 152). In doing so, the court must balance "a parent's recent improvements against 'habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation.'" *Id.* (alteration in original) (quoting *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1231 (Ind. 2013)). "We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination." *Id.*

[11] The trial court made the following pertinent finding:

> There is a reasonable probability that the conditions that resulted in the children's removal and continued placement outside the home will not be remedied by their father who has a history of drug relapses and convictions. Over three years [have] elapsed since the CHINS cases were filed and all new services were referred just prior to trial in this matter due to [Father] being unsuccessful in the past. . . . [Father] has not demonstrated an ability to maintain sobriety outside of incarceration which would take some time.

App. Vol. II at 134.

[12] Father argues that the evidence is insufficient to support termination because "[t]here is no clear and convincing evidence that Father will not maintain his sobriety." Br. of Appellant at 14. Father directs us to favorable evidence, including evidence that, as of the fact-finding hearing, "he had been sober for around eight months." *Id.* Father observes that "[h]e could have used drugs in jail, but he resisted the temptation" and completed several programs while incarcerated. *Id.* Father directs our attention to evidence of steps he was taking to address addiction, among them, taking medication to help with cravings. He also directs us to evidence that relapses are not uncommon, and that "a single relapse does not mean a person is incapable of conquering . . . addiction." *Id.*

[13] However, in its findings and conclusions, the juvenile court acknowledged the positive steps Father had taken after the December 2017 arrest. Nevertheless, the court also reflected on Father's pattern of behavior, which included relapses during the pendency of the CHINS matter. The court also observed that Father had accrued "several drug[-]related convictions over the past six years." App.

Vol. II at 134. With respect to Father's criminal history, there was evidence Father had committed substance-related offenses in 2011, 2012, and 2015, with pending charges related to the arrest in 2017. The prior convictions included convictions for OVWI, possession of cocaine, and possession of a narcotic drug. The recent charges were similar, involving the possession of drugs. The evidence indicated that Father would stay out of trouble for a year or so, and then go off track again—relapsing or committing another drug-related offense.

[14] Ultimately, "[r]equiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior." *In re E.M.*, 4 N.E.3d at 643. Here, although Father had taken positive steps following his recent arrest, the trial court was free to give more weight to his pattern of conduct, determining that there was a reasonable probability that Father would not maintain his sobriety. At bottom, Father requests that we reweigh evidence, contrary to our standard of review. Moreover, to the extent Father is arguing that the instant matter "has not reached the last resort stage," Br. of Appellant at 16, and that Father should have more time to address his addiction and demonstrate his ability to parent, we note that Children had been removed for three years while Father addressed this issue. *See In re Campbell*, 534 N.E.2d 273, 275 (Ind. Ct. App. 1989) ("We are unwilling to put [this child] on a shelf until her parents are capable of caring for her appropriately. Two years without improvement is long enough.")

[15] The evidence is sufficient to support the termination of Father's parental rights.

[16]     Affirmed.

Bradford, J., and Brown, J., concur.