## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 26 2018, 7:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT W.S.

Victoria L. Bailey
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEY FOR APPELLANT S.S.

Danielle Sheff
Sheff Law Office
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE INDIANA DEPARTMENT OF CHILD SERVICES

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent–Child Relationships of: A.S. and An.S. (Minor Children)

and

W.S. (Father) and S.S. (Mother),

*Appellants-Respondents,*

*v.*

The Indiana Department of Child Services,

*Appellee-Petitioner,*

December 26, 2018

Court of Appeals Case No.
18A-JT-1652

Appeal from the Marion Superior Court

The Hon. Marilyn A. Moores, Judge
The Hon. Scott B. Stowers, Magistrate

Trial Court Cause Nos.
49D09-1707-JT-621
49D09-1707-JT-622

and

Child Advocates, Inc.,
*Appellee-Guardian* ad Litem.

**Bradford, Judge.**

# Case Summary

[1]     W.S. ("Father") and S.S. ("Mother") (collectively, "Parents") have seven children together, two of whom, A.S. and An.S. (collectively, "the Children"), are the subject of this appeal. In April of 2015, the Indiana Department of Child Services ("DCS") visited Parents' home and found it to be in poor condition. DCS removed the Children and petitioned to have them adjudicated to be children in need of services ("CHINS"). In August of 2015, the juvenile court adjudicated the Children to be CHINS and ordered several reunification services for Parents, none of which were successfully completed. In May of 2016, the juvenile court suspended visitation with the Children, and, in July of 2017, DCS petitioned to terminate Parents' parental rights in the Children. In June of 2018, following a termination hearing spread over four days, the juvenile court ordered Parents' parental rights terminated. Mother contends that she was denied due process on the first day of the termination hearing, and both Parents contend that the juvenile court's judgment of termination was clearly erroneous. Because Mother has waived any claim that she was denied

due process and we disagree that the juvenile court's judgment was clearly erroneous, we affirm.

# Facts and Procedural History

[2] Parents have seven children together, including A.S. (born November 4, 2005) and An.S. (born October 10, 2010). A.S. has a cognitive disability and chronic lung disease and had heart surgery soon after her birth. An.S. has severe learning disabilities and has experienced short-term memory loss. In April of 2015, DCS family case manager Amy Bricker ("FCM Bricker") visited Parents' Indianapolis home and observed that the front door was ajar and could be opened without using the knob. FCM Bricker noted that there were no working utilities; there was very little furniture and no appliances; personal items were stored in bags; the linoleum floor was unclean and covered with trash and some pills; the ceiling was completely caved in; the family appeared to be staying in only one bedroom; and the bathtub was full of garbage, trash, and debris. On April 2, 2015, DCS removed the Children from the home and filed a petition alleging that the they were CHINS. On July 29, 2015, Father pled guilty to carrying a handgun without a license, and the trial court sentenced him to six days of incarceration and 359 days of probation.

[3] On August 3, 2015, the juvenile court found the Children to be CHINS and ordered Parents to complete mental health assessments and participate in reunification services, including home-based therapy, home-based case management, substance-abuse assessment, and random drug screens. On

August 14, 2015, the juvenile court ordered An.S. to be placed back with Parents on a trial basis. Home-based therapist Katy Shapiro provided the family with therapy and crisis management in September of 2015 but closed out the services that same month due to noncompliance. On October 5, 2015, the juvenile court ordered that An.S. again be removed from Parents' home. An.S. was placed in a foster home in October of 2015.

[4] On May 12, 2016, the juvenile court suspended visitation with the Children after it found that Parents had not been working with their home-based therapist and that the visits had not been going well. An.S. had displayed behavioral issues before and after visitation, including acting out, shutting down, not speaking, wetting himself, and sleepwalking, behaviors that largely subsided when visitation was terminated. An.S. does not ask his foster family about Parents.

[5] On June 23, 2016, the juvenile court held a permanency hearing, after which it made the following findings:

> 1) This matter has been open since April of 2015 and no service provider has recommended that the children be returned to the care of Mother or Father.
>
> 2) Neither parent has completed home-based therapy and are only minimally complying with home-based case management. The home-based case manager has not seen any sustainable improvement.
>
> 3) Housing issues still remain and where the family lives is unknown and the employment history for both parents is not stable.

> 4) Service providers for the children agree with changing the plan to adoption.
>
> 5) Neither parent is regularly screening but it is noteworthy that Father's last screen was positive for synthetic THC.
>
> 6) Neither parent has completed the recommendations of the dual diagnosis assessment.
>
> 7) Parents do not attend [child and family team meetings ("CFTMs")] and parents do not maintain contact with DCS.
>
> 8) [An.S.] is in a home [that] is pre-adoptive, the other children are not.
>
> The best interests of [the Children] require a change in plan to adoption.

Ex. Vol. I p. 243. On February 2, 2017, the juvenile court held a permanency hearing, after which it maintained adoption as the plan for the Children and did not authorize visitation. On July 5, 2017, DCS petitioned to terminate Parents' parental rights in the Children. In September of 2017, Father pled guilty to Level 5 felony robbery, and the trial court sentenced him to two years of incarceration.

[6] Also in September of 2017, family case manager Arealia Williams ("FCM Williams") took over the case, and A.S. was placed in therapeutic foster care. Father was already incarcerated, and Mother was subject to service referrals for home-based care management, home-based therapy, and random drug screens. At some point, these services were discontinued due to Mother's lack of engagement. Mother had completed only one drug screen and FCM Williams never received a report that Parents had completed services.

On February 7, March 14 and 28, and April 10, 2018, the juvenile court held a termination hearing. At the time, A.S. was in pre-adoptive foster care, and An.S. had been in the same pre-adoptive placement since October of 2015. FCM Williams testified that A.S.'s services included medication management for behavioral issues and an individualized education plan ("IEP"). An.S.'s services included a tutor, speech therapy, and an IEP. FCM Williams testified that DCS's plan involving the termination of parental rights and adoption was appropriate for the Children, that they were doing well in their current placements, and that it was their best interests to remain where they were.

Court-appointed special advocate Susan Kobets ("CASA Kobets"), who had been appointed to the case in July of 2015, also testified. CASA Kobets indicated that she met with both Children at least once a month as well as attending school meetings and CFTMs. As for Parents, they only attended approximately half of the CFTMs. CASA Kobets indicated that both Children's needs were being met in their current placements. With regard to An.S. specifically, CASA Kobets testified that his current placement was capable of providing him with long-term stability and support without DCS involvement. CASA Kobets opined that neither Parent had made progress sufficient to justify pursuing reunification and that termination and remaining in their current placements was in the Children's best interests. CASA Kobets testified, "I just think after all of this time and all of these promises that it's just time to move on with these children. These children need some permanency. They need to know who they can depend on." Tr. Vol. II p. 197. Counsel for

the guardian *ad litem* ("GAL") agreed that termination was in the Children's best interests. On June 20, 2018, the juvenile court ordered the termination of Parents' parental rights in An.S. and A.S. The juvenile court's order provided, in part, as follows:

> 34. There is a reasonable probability that the conditions that resulted in the children's removal and continued placement outside of the home will not be remedied by their parents. [Parents] have had nearly three years to demonstrate an ability to parent and provide a stable home and have not done so. Despite DCS making multiple referrals, neither parent [has] successfully completed any services. There has been a long pattern of instability that has not improved. Since parenting time was suspended by the CHINS Court in May 2016, neither parent has progressed sufficiently in services for pare[n]ting time to have been reinstated.
>
> 35. Continuation of the parent–child relationship poses a threat to the children's best interests in that it would serve as a barrier for them obtaining permanency through an adoption when their parents are unable to provide permanency and parent. Both children are thriving in their respective foster homes. Their behaviors have improved significantly since their parenting time with [Parents] was suspended.
>
> 36. Termination of the parent–child relationship is in the children's best interests. Termination would allow them to be adopted into a stable and permanent home where their needs will be safely met.
>
> 37. There exists a satisfactory plan for the future care and treatment of the children, that being adoption.
>
> 38. The [GAL] agrees with the permanency plan of adoption as being in the children's best interests.
>
> 39. [Both Children] have on two (2) separate occasions been adjudicated to be CHINS. In 2012 under Cause Numbers

49D09-1202-JC-007745 and 48; and in 2015 under Cause Numbers 49D09-15-4-JC-001101 [and] 2.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the parent–child relationship between [A.S.] and [An.S.] and [Parents] is hereby terminated. All rights, powers, privileges, immunities, duties and obligations, any rights to custody, parenting time or support, pertaining to the relationship are permanently terminated, including the need to consent to adoption.

Order pp. 3–4.

# Discussion and Decision

[9] The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent–child relationship is "one of the most valued relationships of our culture." *Id.* However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when parents are unable or unwilling to meet their responsibilities as parents. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Therefore, parental rights are not absolute and must be subordinated to the children's interest in determining the appropriate disposition of a petition to terminate the parent–child relationship. *Id.*

[10] In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Invol. Term. of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider

the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.* Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id.* First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id.* In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent–child relationship only if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id.* A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact or the conclusions do not support the judgment. *Id.*

# I. Due Process

[11] Mother contends that certain alleged anomalies that occurred on the first day of the termination hearing, at which she appeared telephonically and by counsel, deprived her of due process. Specifically, Mother contends that each of the following occurred during the hearing: (1) FCM Bricker interrupted Mother's counsel during cross-examination and objected to her questions; (2) Father interjected telephonically; (3) police arrived at Mother's home at some point during the hearing to investigate a report that two of the Children's siblings were there, as they had been reported as runaways; and (4) three of her other children were present with Mother, somehow causing her to violate the separation of witnesses order. Mother, however, never raised her due process

arguments in the juvenile court. A parent waives a due-process claim in a CHINS or termination proceeding by raising that claim for the first time on appeal. *See*, *e.g.*, *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 194–95 (Ind. Ct. App. 2003) (concluding that a mother waived any argument that irregularities in CHINS proceeding that preceded termination were waived because they were brought up for the first time on appeal); *In re K.S.*, 750 N.E.2d 832, 834 n.1 (Ind. Ct. App. 2001) (concluding that a mother waived a claim of due process denial because the constitutional claim was brought for the first time on appeal). Because Mother failed to raise her due process arguments in the juvenile court, she has waived them for appellate review.

## II. Whether the Juvenile Court's Termination of Parents' Parental Rights was Clearly Erroneous

[12] Indiana Code section 31-35-2-4(b) governs what DCS must allege and establish to support a termination of parental rights. Of relevance to this case, DCS was required to establish by clear and convincing evidence that, for each of the Children,

> (A) that […] the following is true:
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>> [….]
> (B) that one (1) of the following is true:
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for

placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent–child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

[13] It is not disputed that both Children were removed for at least six months pursuant to a dispositional decree, a requirement imposed by Indiana Code section 31-35-2-4(b)(2)(A). Mother contends, however, that DCS failed to establish that (1) the conditions that resulted in the Children's removal were not remedied, (2) the continuation of the parent–child relationship poses a threat to the well-being of the Children, (3) termination is in the best interests of the Children, or (4) DCS has a satisfactory plan for the care and treatment of the Children. Father also contends that DCS presented insufficient evidence to establish that termination was in the Children's best interests.

## A. Indiana Code Section 31-35-2-4(b)(2)(B)

[14] Mother contends that the record does not establish that the reasons for the Children's continued removal would not be remedied or that the continued parent–child relationship posed a threat to the Children. The juvenile court, however, also found that both Children had already been adjudicated to be

CHINS on two separate occasions, a finding neither parent challenges. Because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, DCS must only establish one of the circumstances listed. *See* Ind. Code § 31-35-2-4(b)(2)(B) (providing that DCS must establish that one of the following is true: "[t]here is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied[, t]here is a reasonable probability that the continuation of the parent–child relationship poses a threat to the well-being of the child[, or t]he child has, on two (2) separate occasions, been adjudicated a child in need of services"). Because DCS established that both Children had been adjudicated to be CHINS on two separate occasions, we need not further address Mother's specific arguments regarding the other provisions of Indiana Code section 31-35-2-4(b)(2)(B).

[15] That said, DCS, at the very least, has produced ample evidence to sustain the juvenile court's finding that there is a reasonable probability that the circumstances that led to the Children's removal would not be remedied. In making such a determination, a juvenile court engages in a two-step inquiry. First, the juvenile court must "ascertain what conditions led to their placement and retention in foster care." *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1231 (Ind. 2013). After identifying these initial conditions, the juvenile court must determine whether a reasonable probability exists that the conditions justifying a child's continued "placement outside the home will not be remedied." *In re D.D.*, 804 N.E.2d 258, 266 (Ind. Ct. App. 2004) (citation

omitted). The statute focuses not only on the initial reasons for removal "but also those bases resulting in continued placement outside the home." *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*. DCS need not rule out all possibilities of change; rather, it must establish that there is a reasonable probability that the parent's behavior will not change. *In re B.J.*, 879 N.E.2d 7, 18-19 (Ind. Ct. App. 2008), *trans. denied*.

[16] Here, the Children were removed because of the poor condition of the family's home and substance-abuse issues. A.S. has never been returned to Parents' care, and An.S. was later removed in October 2015 after a brief trial home visit. As for whether the conditions were likely to be remedied, Parents had nearly three years to demonstrate the ability and/or willingness to parent and provide a stable home but did not do so. Despite DCS making multiple referrals, neither Parent successfully completed any services nor gave any indication that they had managed to achieve or maintain any stability in their living situation. The juvenile court also noted that since visitation had been suspended in May of 2016, neither parent ever progressed sufficiently in services for parenting time to be reinstated. We think that three years without any significant progress is sufficient to support a finding that none was likely to occur in the future. DCS provided ample evidence to sustain the juvenile court's finding that there was a reasonable probability that the circumstances that led to the Children's removal would not be remedied.

## B. Indiana Code Section 34-35-2-4(b)(2)(C)

[17] Mother and Father both contend that insufficient evidence supports the juvenile court's conclusion that termination is in the Children's best interests. We are mindful that in determining what is in the best interests of the Children, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride*, 798 N.E.2d at 203. In doing so, the juvenile court must subordinate the interests of the parents to those of the children involved. *Id.* Furthermore, this court has previously determined that the testimony of a GAL regarding a child's need for permanency supports a finding that termination is in the child's best interests. *In the matter of Y.E.C.*, 534 N.E.2d 273, 276 (Ind. Ct. App. 1992).

[18] FCM Williams testified that DCS's adoption plan was appropriate for the Children and that it was in their best interests to remain in their placements. CASA Kobets also testified that in was in the Children's best interests to terminate Parents' parental rights and remain in their placements. Finally, the GAL agreed through counsel that termination was in the Children's best interests. Although this evidence by itself is likely sufficient to sustain the juvenile court's finding that termination is in the Children's best interests, *see, e.g.*, *In re T.F.*, 743 N.E.2d 766, 776 (Ind. Ct. App. 2001) (concluding that testimony of GAL and FCM was sufficient to sustain finding that termination was in the child's best interests), there is more.

[19] A.S. and An.S. were removed from Parents' home in April of 2015, and, except for a brief attempt to return An.S. to the home, have been in foster placements ever since. In their placements, the Children, who each have special needs, are doing well and receiving assistance that they were not receiving when with Parents. CASA Kobets testified that both Children's needs were being met in their current placements and that they needed permanency. A.S.'s services included medication management for behavioral issues and an IEP, while An.S.'s services included a tutor, speech therapy, and an IEP.

[20] Moreover, Parents' behavior provides no indication that they can adequately care and provide for the Children or even that they are particularly interested in trying. Neither Parent has a stable employment history, and housing issues have not been resolved. Father was incarcerated for much of the CHINS and termination proceedings, and Mother has shown—at best—sporadic interest in reunification. There is no indication that either Parent has come close to successfully completing any of the services offered to them, including, but not limited to, home-based therapy and case management, drug screening, and CFTMs.

[21] Finally, there is evidence that a continued relationship with Parents would be actively detrimental to the Children, even assuming that they could provide for their basic needs. Visitation was permanently suspended at least in part because An.S.'s reactions to it were so intensely negative. Since visitation has been suspended, An.S.'s behaviors have subsided and he does not ask about Parents.

DCS has produced sufficient evidence to sustain a conclusion that termination is in the Children's best interests.

## C. Indiana Code Section 34-35-2-4(b)(2)(D)

[22] Finally, Mother contends that the juvenile court's conclusion that DCS has a satisfactory plan for the placement of the Children is unsupported by the record. DCS's plan for the Children if the juvenile court granted termination is adoption. "For a plan to be 'satisfactory,' for purposes of the statute, it 'need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent–child relationship is terminated.'" *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 374 (Ind. Ct. App. 2007) (quoting *In re Termination of Parent–Child Relationship of D.D.*, 804 N.E.2d 258, 268 (Ind. Ct. App. 2004), *trans. denied*), *trans. denied*. DCS's plan for eventual adoption by a foster family easily satisfies this test, as "(a)ttempting to find suitable parents to adopt [the Children] is clearly a satisfactory plan." *Id.* at 375 (citing *Matter of A.N.J.*, 690 N.E.2d 716, 722 (Ind. Ct. App. 1997)). In any event, DCS's plan is more than just a general sense of direction, as An.S.'s foster mother testified that his foster parents would consider adopting him if he became available and that their home would be able to provide for his needs, and A.S.'s current placement is pre-adoptive. Mother has failed to establish error in this regard.

# Conclusion

[23]   Because she raises it for the first time on appeal, Mother has waived her argument that the juvenile court denied her the process to which she is due. Mother and Father have also failed to establish that the juvenile court's judgment is clearly erroneous in any respect.

[24]   The judgment of the juvenile court is affirmed.

Bailey, J., and Brown, J., concur.