# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 31 2019, 9:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Talisha R. Griffin
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances H. Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of:

H.O. (Minor Child)

and

T.O. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

December 31, 2019

Court of Appeals Case No.
19A-JT-1681

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Scott B. Stowers, Magistrate

Trial Court Cause No.
49D09-1812-JT-1436

**Bailey, Judge.**

# Case Summary

T.O. ("Father") appeals the termination of his parental rights to H.O. ("Child"), upon the petition of the Marion County Department of Child Services ("the DCS"). Father presents a single, consolidated issue for review: whether the DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination decision. We affirm.

# Facts and Procedural History

Child was born in July of 2008. In December of 2016, Child was in the physical custody of D.C. ("Mother") and Father was incarcerated.[1] At that time, the DCS alleged Child to be a Child in Need of Services ("CHINS") and entered into an informal adjustment with Mother. Mother did not comply with the requirements of the informal adjustment, and Child was placed in the care of Father's brother ("Uncle") and his wife ("Aunt"). Child had previously lived with Uncle and Aunt for a year in which both parents were incarcerated.

---

[1] In 2009, Father had been convicted of battery causing serious bodily injury to a person less than 14 years of age. Father's testimony did not clarify whether or not his incarceration in 2016 was related to the battery conviction.

[3] On February 7, 2017, Child was adjudicated a CHINS. Father was ordered to participate in a parenting program called Father Engagement. Father was released from incarceration in April of 2017 and participated in some services, including visitation. However, he was arrested on multiple occasions in 2018, and charged with resisting law enforcement, possession of marijuana, intimidation, battery, and criminal recklessness with a deadly weapon. His last visit with Child was in October of 2018. On December 7, 2018, Father was charged with battery resulting in bodily injury to a pregnant woman, Father's girlfriend.

[4] On December 14, 2018, the juvenile court ordered that the permanency plan be changed to a plan for adoption. Mother consented to Child's adoption by Aunt and Uncle. On January 7, 2019, the DCS filed a petition to terminate Father's parental rights to Child. On March 6, 2019, Father pled guilty to battery and received a three-year sentence, with two years to be served in work release and one year on probation.

[5] A hearing on the termination petition was conducted on May 14, 2019. At that time, Father was again incarcerated, upon an allegation that he had violated a term of his work release. He was also subject to a no-contact order for the protection of Aunt and a no-contact order for the protection of his former girlfriend and her mother. At the hearing, service providers testified that Father had made some reunification efforts, such as attaining employment, but was unable to complete services or provide Child a stable home due to his chronic incarceration. The Guardian ad Litem ("GAL") and family case managers

opined that termination of the parent-child relationship was in Child's best interests.

[6] On June 3, 2019, the trial court issued its order terminating Father's parental rights. He now appeals.

# Discussion and Decision

## Standard of Review – Sufficiency of the Evidence

[7] When we review whether the termination of parental rights is appropriate, we will not reweigh the evidence or judge witness credibility. *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016). We will consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* In so doing, we give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010) (citing Indiana Trial Rule 52(A)). We will set aside the trial court's judgment only if it is clearly erroneous. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). In order to determine whether a judgment terminating parental rights is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *I.A.*, 934 N.E.2d at 1132.

## Requirements for Involuntary Termination of Parental Rights

"The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re Adoption of O.R.*, 16 N.E.3d 965, 972 (Ind. 2014). Although parental rights are of a constitutional dimension, the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The State is required to prove that termination is appropriate by a showing of clear and convincing evidence, a higher burden than establishing a mere preponderance. *In re V.A.*, 51 N.E.3d at 1144.

Indiana Code Section 31-35-2-4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence to terminate a parent-child relationship:

> (A) that one (1) of the following is true:
>
> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i)　　There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)　　There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)　　The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

[10]　Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court need only to find that one of the three requirements of subsection (b)(2)(B) was established by clear and convincing evidence. *See In re L.S.*, 717 N.E.2d 204, 209 (Ind. Ct. App. 1999).

## Analysis

[11]　According to Father, the DCS failed to present clear and convincing evidence of a reasonable probability that he would fail to remedy the conditions that led to Child's removal, that continuation of the parent-child relationship poses a threat to Child, and that termination of parental rights is in Child's best interests.

[12]　As to failure to remedy conditions, we employ a "two-step analysis." *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). First, we identify the conditions that led

to removal; and second, we must determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* In the second step, the trial court must judge parental fitness as of the time of the termination hearing, taking into consideration the evidence of changed conditions. *Id.* (citing *Bester*, 839 N.E.2d at 152). The trial court is entrusted with balancing a parent's recent improvements against habitual patterns of conduct. *Id.* The trial court has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. *Id.* "Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior." *Id.*

[13] Habitual conduct may include parents' prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied*. The trial court may also consider the services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied.

[14] The trial court's order provides in relevant part:

> There is a reasonable probability that the conditions that resulted in the child's removal and continued placement outside of the home will not be remedied by her father. [Father] has not made meaningful or sustainable progress toward reunification. He continues to commit illegal acts which make him unavailable to provide permanency and [to] parent. The child has been out of [Father]'s custody since December 2016 and he has never progressed to unsupervised parenting time.

Appealed Order at 2.

[15] Child was removed from Mother's custody in 2016; at that time, Father could not provide Child with a home due to his incarceration. He was released from prison in April of 2017. Cyclically, Father obtained employment and housing, but lost both upon his subsequent incarceration. When Father was in the Marion County Jail, he could not visit Child nor could he actively participate in the Father Engagement program.[2] Father's participation in services became "stagnant." (Tr. at 47.) Father visited with Child at the home of Aunt and Uncle but lost that privilege after he struck Aunt with a rock and she obtained a no-contact order. Father was unable to maintain independent housing after he pled guilty to battering his pregnant girlfriend and was placed in work release.

[16] At the hearing, Father testified and acknowledged that he had pending criminal charges. He hoped for dismissal of most of the charges and for his return to work release. Even so, Father could not house Child in work release. Indeed, he admitted that he was unable to care for Child at the present time. The evidence clearly supports the finding that the conditions leading to removal were unlikely to be remedied. Because Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, we need not address Father's contention that there was insufficient evidence of his posing a threat to Child.

---

[2] There was testimony that Father maintained contact with his service provider, but sessions could not occur in the jail.

[17] Father also contends that the DCS did not present clear and convincing evidence that termination is in Child's best interests. In determining what is in a child's best interests, the court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d at 1158. We have previously held that recommendations by the case manager and CASA to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.* at 1158-59.

[18] In addition to evidence of Father's circumstances and response to services, the DCS presented evidence relative to Child's placement. There was testimony that Child had lived with Aunt and Uncle for several years and was bonded with them and their children; she wished to continue living with them; she performed well academically and was in extra-curricular activities. Child's GAL and family case manager opined that termination of Father's parental rights was in Child's best interests. Finally, Father testified that his brother's home was an appropriate place for Child. Father's argument is not a true claim of insufficient evidence. He simply requested that the court extend the relative placement for two years more years while he was incarcerated or in work release, while maintaining Father's legal relationship to Child. The trial court was not obliged to do so. *See In re Campbell*, 534 N.E.2d 273, 275 (Ind. Ct. App. 1989) (holding that, where parents had "failed to correct their behavior for years," the trial court could not be expected to "place [a child] on a shelf" until parents were able to care for the child).

# Conclusion

[19] The DCS established by clear and convincing evidence the requisite elements to support the termination of parental rights.

[20] Affirmed.

Kirsch, J., and Mathias, J., concur.