## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 31 2020, 9:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

A. David Hutson
Hutson Legal
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of:

V.R. (Minor Child)

and

J.R. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

January 31, 2020

Court of Appeals Case No.
19A-JT-1967

Appeal from the Clark Circuit Court

The Honorable Vicki Carmichael, Judge

The Honorable Joni L. Grayson, Magistrate

Trial Court Cause No.
10C04-1904-JT-20

**Bailey, Judge.**

# Case Summary

[1] J.R. ("Father") and C.H. ("Mother") had a daughter, V.R. ("Child"). Father appeals the termination of his parental rights to Child, challenging the sufficiency of the evidence supporting termination.[1]

[2] We affirm.

# Facts and Procedural History

[3] Child was born on March 9, 2017. In August 2017, Child was living with Mother. At that time, there was a pending Child in Need of Services ("CHINS") case concerning a different child of Mother's, and Mother was subject to drug screens. After Mother submitted three positive screens for methamphetamine and amphetamine, the Clark County Department of Child Services ("DCS") obtained an emergency order removing Child from Mother's care. Child was placed with a family friend. Mother and Father admitted that Child was a CHINS and they agreed to place Child with Father. In September 2017, the trial court accepted the admission, adjudicated Child a CHINS, and placed Child in Father's care. On October 4, 2017, the trial court entered a dispositional order in which it required Father to successfully complete family-

---

[1] Mother voluntarily relinquished her parental rights. She does not actively participate on appeal.

preservation programming, keep appointments with service providers, refrain from using illegal substances, submit to random drug screens, and obey the law.

[4] Father met with a fatherhood-engagement service provider for an initial intake. He did not attend the next appointment and did not respond to the service provider's attempts to reach him throughout October 2017. In December 2017—when Child was approximately nine months old—Child was removed from Father's care because Father "began having positive drug screens," testing positive for methamphetamine and amphetamine. Tr. at 52.[2] When Child was removed, Father told DCS he was willing to complete a substance-abuse assessment, which, at that point, was not court-ordered. He did not obtain the assessment. After being removed, Child was placed in foster care, and Father was permitted supervised visits with Child. His participation was inconsistent.

[5] In July 2018, the permanency plan was changed to adoption. The court also modified its dispositional order, requiring Father to complete a substance-abuse assessment and follow recommendations. Father did not complete the assessment. During the CHINS matter, Father was periodically arrested on outstanding warrants. He was also incarcerated from February 2019 to June 2019, and he pleaded guilty to possession of methamphetamine. There is evidence that Father "continued to screen positive for illegal substances" and has "not made any attempts to address those issues." *Id.* at 61.

---

[2] All of our citations to the Transcript refer to Volume 2.

On April 29, 2019—at which point Father was incarcerated and Child was two years old—DCS filed a petition to terminate Father's parental rights. The trial court held a fact-finding hearing in July 2019, and, on August 28, 2019, entered its written order terminating Father's parental rights. Father now appeals.

# Discussion and Decision

"A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Our General Assembly has thus set a high bar for terminating parental rights." *In re Bi.B.*, 69 N.E.3d 464, 465 (Ind. 2017).

Under Indiana Code Section 31-35-2-4(b)(2), a petition seeking to terminate the parent-child relationship must allege, in pertinent part:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree. . . .
>
> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

[9] The petitioner must prove each element by clear and convincing evidence. Ind. Code § 31-37-14-2. If the court determines the allegations are true, "the court shall terminate the parent-child relationship." I.C. § 31-35-2-8(a). In doing so, the court must enter findings and conclusions, irrespective of whether the parties have requested them. *See* I.C. § 31-35-2-8(c); Ind. Trial Rule 52. We will not "set aside the findings or judgment unless clearly erroneous," T.R. 52(A); clear error is "that which leaves us with a definite and firm conviction that a mistake has been made," *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). In reviewing for clear error, we look to "whether the evidence supports the findings, and whether the findings support the judgment." *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016). Moreover, we neither reweigh the evidence nor judge the credibility of witnesses, *In re R.S.*, 56 N.E.3d 625, 628 (Ind. 2016), and we give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses," T.R. 52(A).

[10] Here, the trial court terminated Father's parental rights in August 2019. The evidence indicates that Child has been removed from Father's care since December 2017—for well over six months. Furthermore, there is evidence that the plan is adoption, which is a satisfactory plan. *See In re R.L.-P.*, 119 N.E.3d 1098, 1105 (Ind. Ct. App. 2019). Thus, there is sufficient evidence supporting termination under subsections (b)(2)(A) and (b)(2)(D) of the termination statute.

# Remedied Conditions

As to subsection (b)(2)(B), when considering the likelihood that conditions resulting in the Child's removal will not be remedied, the trial court must evaluate "the parent's fitness at the time of the termination hearing, 'taking into consideration evidence of changed conditions.'" *In re K.E.*, 39 N.E.3d 641, 647 (Ind. 2015) (quoting *Bester*, 839 N.E.2d at 152). "Changed conditions are balanced against habitual patterns of conduct to determine whether there is a substantial probability of future neglect." *Id.* "Habitual conduct may include 'criminal history . . . [and] drug and alcohol abuse. . . .'" *Id.* (quoting *In re A.D.S.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied*.). Further, when evaluating the probability of future neglect, a court may consider "the services offered to the parent and the parent's response to those services." *Id.*

Here, there is evidence Child was removed from Father's care because Father submitted a positive drug screen for methamphetamine and amphetamine. There is also evidence that Father "continued to screen positive for illegal substances." Tr. at 61. Moreover, DCS elicited testimony that Father had been incarcerated from February 2019 to June 2019, and that Father "pleaded guilty to a possession of methamphetamine charge during that stint[,] the February to June stint, in Jackson County." *Id.* In its termination order, the trial court determined there is a reasonable probability that the conditions resulting in Child's placement outside Father's home would not be remedied, observing that Father "failed to demonstrate that he can provide [Child] with a safe, sober and healthy home." App. Vol. II at 10. The trial court further found that

Father "continued to use drugs throughout the CHINS proceeding" and "committed a criminal offense during the CHINS proceeding." *Id.* at 11.

[13] Father challenges the sufficiency of evidence that he used drugs. Father argues that the family case manager "did not explain when or how many times . . . [Father] tested positive for illegal substances, nor did she explain what, if anything, he tested positive for." Br. of Appellant at 14. Yet, the family case manager testified that Child was removed because Father "began having positive drug screens." Tr. at 52. When asked what Father was testing positive for, she replied: "Methamphetamine and amphetamine." *Id.* She later testified that Father "has continued to screen positive for illegal substances." *Id.* at 61. We are not at liberty to reweigh this evidence of ongoing drug use.

[14] Father also challenges the sufficiency of evidence that he committed a drug offense during the CHINS proceedings. Father argues that the evidence regarding the timing of his plea of guilty "does not establish the time of his drug use, if any," and there is not clear and convincing evidence Father was "using drugs while the CHINS case was pending." Br. of Appellant at 15. However, even if DCS did not establish when the pleaded-to criminal offense occurred, there is evidence that Father continued to screen positive for drugs. *See, e.g.*, *Lever Bros. Co. v. Langdoc*, 655 N.E.2d 577, 583 (Ind. Ct. App. 1995) ("To the extent that the judgment may be based on erroneous findings which are superfluous and not fatal to the judgment, the judgment may be upheld if the

remaining valid findings and conclusions support the judgment.").[3]  There is also evidence that Father failed to participate in a court-ordered substance-abuse assessment.  As to that assessment, the family case manager testified that Father sometimes expressed interest in complying with the dispositional order.  When Father expressed interest, the case manager—on three occasions—went over the CHINS order with Father and "ma[d]e sure [Father] understood what he was required to do."  Tr. at 59.  The case manager told Father "who his referrals were through" and "ma[d]e a phone call to make sure those were still good [referrals] and [Father] could still participate."  *Id.*  Despite having the necessary information, Father never completed the court-ordered assessment.

[15]  It was illicit drug use that led to Child's removal from the home.  We conclude that clear and convincing evidence supports findings related to Father's ongoing issues with substance abuse.  Thus, the trial court did not clearly err in determining that conditions leading to removal were not likely to be remedied.[4]

## Best Interests

[16]  "In determining the best interests of a child, the trial court is required to look beyond the factors identified by DCS and to consider the totality of the

---

[3] As to the timing of the offense, in its brief, DCS speculates that the court took judicial notice of the record in the Jackson County case.  In his reply brief, Father argues that taking judicial notice of that record—whether by the trial court or now on appeal—would be improper.  In any case, we need not refer to Jackson County records to conclude that there is sufficient evidence supporting the termination of parental rights.

[4] Father challenges other findings, including those related to his parenting skills.  As we have identified findings related to substance abuse that are supported by the evidence and support the court's determination under Indiana Code Section 31-35-2-4(b)(2)(B), we need not address the other challenged findings.

evidence." *In re A.S.*, 17 N.E.3d 994, 1005 (Ind. Ct. App. 2014), *trans. denied*. "In so doing, the court must subordinate the interests of the parents to those of the child involved." *In re K.R.*, 133 N.E.3d 754, 764 (Ind. Ct. App. 2019).

[17] Here, there was evidence that Father was periodically incarcerated, with a continuous period of incarceration from February 2019 to June 2019. There was also evidence that Father pleaded guilty to a drug-related offense during the pendency of the CHINS matter. The trial court ordered Father to complete a substance-abuse assessment—and, prior to that point, Father volunteered to complete a substance-abuse assessment—but Father failed to follow through. Moreover, the evidence indicates that Father "continued to screen positive for illegal substances." Tr. at 61. As to his relationship with Child, Father was inconsistent in attending supervised visits. Child was removed from Father's care when she was nine months old. Child was more than two years old at the time of the fact-finding hearing, having spent the majority of her life in foster care. *See In re Campbell*, 534 N.E.2d 273, 275 (Ind. Ct. App. 1989) (expressing an unwillingness to put a child "on a shelf" until a parent is ready). There was evidence that Child was bonded to Father in May 2018. However, as the case progressed and Father was incarcerated for several months in 2019, "the relationship . . changed," with it taking Child longer to "warm up" to him. Tr. at 40. There was testimony that the parent-child relationship "kind of got off track since [Father] hasn't been around and things haven't been consistent." *Id.*

[18] The family case manager recounted Father's actions over the course of the CHINS proceedings and testified that Father had not demonstrated the ability

to provide Child with a safe and stable environment. The family case manager specifically noted Father's "lack of participation in services," including that Father "continued to screen positive for illegal substances" and had "not made any attempts to address those issues." *Id.* at 61. The family case manager also noted that Father had demonstrated a pattern of being incarcerated: "He's had multiple incarcerations throughout the case for a couple days . . . with the exception with [*sic*] the long stint of February of 2019 to June of 2019." *Id.* Having reflected on the lack of progress during the proceedings, the family case manager recommended that the trial court terminate Father's parental rights.[5]

[19] We conclude that clear and convincing evidence supports the trial court's conclusion that terminating Father's parental rights is in Child's best interests.

[20] Sufficient evidence supports the decision to terminate Father's parental rights.

[21] Affirmed.

Kirsch, J., and Mathias, J., concur.

---

[5] Father asks this Court to revisit a line of cases supporting the proposition that, "if the record supports that the conditions resulting [in] a child's removal . . . will not be remedied, all that is necessary to establish that termination of the parent-child relationship is in the child's best interest is the 'recommendation' of the DCS case manager and court-appointed advocate for the child." Br. of Appellant at 25 (citing, as an example, *In re A.D.S.*, 987 N.E.2d at 1158-59). As we do not rely on the challenged proposition in conducting our best-interests analysis, we decline Father's request to reconsider this line of cases.